[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15038

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 28, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00026-CR-HLM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY LEE MCDANIEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 28, 2011)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

WILSON, Circuit Judge:

Ricky Lee McDaniel was convicted of possession of child pornography in

violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). The district court sentenced him to 60 months of imprisonment and three years of supervised release and ordered him to pay restitution to "Vicky," a child depicted in one of his images. McDaniel asks whether 18 U.S.C. § 2259 requires a showing of proximate cause, and if so, whether the district court clearly erred in ordering restitution. For the following reasons, we affirm.

## I. BACKGROUND

A jury convicted McDaniel of possession of child pornography, finding that McDaniel possessed 600 or more images of child pornography. The National Center for Missing and Exploited Children ("NCMEC") compares images and identifies the children depicted within. The NCMEC then notifies an identified victim every time someone is arrested who is found to possess his or her image. The Government submitted McDaniel's collection of images and videos to the NCMEC for identification of known victims after McDaniel's re-indictment in June 2008. The NCMEC discovered that McDaniel's child pornography collection included an image of Vicky being raped and abused by her father when she was 10 years old. The NCMEC then notified Vicky.

The Government read a statement from Vicky during McDaniel's sentencing hearing. Vicky had begun receiving NCMEC notifications in

2

December 2006, and she explained in her statement that since she learned that videos and images of her are circulated on the Internet, she lives

> every day with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. . . . Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. . . . They're being entertained by my shame and pain.

Some people who have seen Vicky's images have tried to contact her, and one created a YouTube slide show of her images. Vicky explained "every time [my images] are downloaded I'm exploited again. My privacy is breached and my life feels less and less safe. I will never be able to have control over who sees me raped as a child."

Vicky moved, through both the Government and her own counsel, for restitution pursuant to the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259. Vicky sought approximately $185,000 for past psychological services and future counseling and therapy, and $3,500 in attorneys' fees. At the restitution hearing, the Government offered Dr. Randall Green as an expert on the impact of psychological trauma. Dr. Green evaluated Vicky in April and November of 2009, diagnosing her with post-traumatic stress disorder, dissociative disorder, and depression. Dr. Green testified that Vicky's abuse and

3

the circulation of her images on the Internet have caused Vicky to suffer severe behavioral problems. Dr. Green opined that Vicky's knowledge that her images are being disseminated on the Internet causes Vicky to suffer a continuing trauma that he compared to an ongoing "slow acid drip." She also suffers knowing that pedophiles are using images of her abuse to groom future victims. Dr. Green opined that Vicky would need approximately $166,000 to $188,000 of future counseling or therapy because of the damages she incurred from the original abuse and her awareness of the images on the Internet.

The district court issued a written order granting in part the Government's request for restitution. First, the court found that Vicky was a victim of McDaniel's possession of child pornography. Believing that section 2259 requires a showing of proximate causation, the court concluded that the Government proved by a preponderance of the evidence that McDaniel's possession of Vicky's image proximately caused her harm. Although Vicky's father caused the initial harm, the court found that her father's culpability did not insulate McDaniel from responsibility for his separate crime of possessing an image of her sexual abuse. Citing both Vicky's letter and Dr. Green's testimony, the district court found that the evidence showed that Vicky "suffers every time the child pornography containing her image is traded and viewed." The court further noted that because

4

of the NCMEC's practice, Vicky received notice that McDaniel possessed her image. Thus the court concluded that McDaniel's knowing possession of child pornography proximately caused Vicky's "real and identifiable injuries that now require clinical therapy to redress, and that will continue to require such therapy in the future." Accordingly, the court ordered McDaniel to pay Vicky $12,700 in restitution.

## II. STANDARDS OF REVIEW

"We review *de novo* the legality of an order of restitution, but we review factual findings underlying a restitution order for clear error." *United States v. Washington*, 434 F.3d 1265, 1267 (11th Cir. 2006). Whether a person is a "victim" is a legal conclusion we review *de novo*, "but proximate cause is a factual finding we review for clear error." *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007).

## III. DISCUSSION

Section 2259(a) provides that a district court "shall order restitution for any offense under this chapter." 18 U.S.C. § 2259(a). The order of restitution "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." § 2259(b)(1). The "full amount of the victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.

§ 2259(b)(3)(A)–(F). A "victim" is defined as "the individual harmed as a result of a commission of a crime under this chapter." § 2259(c). It is undisputed that McDaniel's crime—the possession of material depicting the sexual exploitation of children—falls under this chapter.

### 1. *Is Vicky a "victim"?*

First, we agree with the district court that McDaniel "harmed" Vicky under the meaning of section 2259(c) by possessing images of her sexual abuse as a minor. In sentencing appeals, we have held that the minors depicted in child pornography are the "primary victims" not only when the photographs are taken, "but also when they are subsequently transported or distributed from one person to another." *United States v. Tillmon*, 195 F.3d 640, 644 (11th Cir. 1999) (per curiam). Although "an argument can be made that the production of child pornography may be more immediately harmful to the child involved, the dissemination of that material certainly exacerbates that harm, not only by

6

constituting a continuing invasion of privacy but by providing the very market that led to the creation of the images in the first place." *Id.*

In *New York v. Ferber*, the Supreme Court acknowledged that the distribution of child pornography is "intrinsically related to the sexual abuse of children" because, *inter alia*, "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." 458 U.S. 747, 759, 102 S. Ct. 3348, 3355 (1982).

Like the producers and distributors of child pornography, the possessors of child pornography victimize the children depicted within. The end users of child pornography enable and support the continued production of child pornography. They provide the economic incentive for the creation and distribution of the pornography, and the end users violate the child's privacy by possessing their image. All of these harms stem directly from an individual's possession of child abuse images. Thus the district court did not err in finding that Vicky was a victim of McDaniel's possession of child pornography, and consequently, that she is eligible for restitution under section 2259.

2.     *Does § 2259 require proximate causation?*

Next, we hold that section 2259 limits recoverable losses to those proximately caused by the defendant's conduct. Three other circuits agree. *See*

*United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) (determining the defendant engaged in "conduct [that] was the proximate cause of the victim's losses" and therefore was liable to pay restitution under section 2259); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) (explaining that section 2259 "incorporates a requirement of proximate causation" and therefore "a causal connection between the offense of conviction and the victim's harm"); *In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009) ("Section 2259(b)(3) therefore arguably requires the government to establish that recoverable damages must proximately result from the 'offense.'").

Because "proximate result" is included in only the last of the enumerated types of losses in § 2259(b)(3), the Government argues that proximate cause is not required for the first five categories of loss, which the Government argues require only a generalized showing of "harm."[1]  But the Government's argument fails because it is contrary to the plain language of section 2259, which covers, *inter alia*, "losses suffered by the victim as a proximate result of the offense."  § 2259(b)(3)(F).

---

[1]  But if there was "no proximate cause requirement in the statute, a restitution order could hold an individual liable for a greater amount of losses than those caused by his particular offense of conviction."  *In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009) (quoting *United States v. Paroline*, 672 F. Supp. 2d 781, 790 (E.D. Tex. 2009)).

8

"When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S. Ct. 516, 518 (1920). The phrase "as a proximate result of the offense" is equally applicable to medical costs, lost income, and attorneys' fees as it is to "any other losses." Because the language of the statute is plain, our inquiry ends here. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).

3.     *Did McDaniel's conduct proximately cause Vicky's losses?*

McDaniel next argues that his conduct did not proximately cause Vicky's harm. Instead, he contends that her father and the distribution of the images caused her harm, and by the time he possessed the images, the harm had already been done. He asserts that restitution is appropriate only in cases where the defendant actually sexually abused a child or produced the child pornography because, in those cases, the defendant's conduct actually harmed the child.

We disagree. Dr. Green explained that each NCMEC notification adds to the "slow acid drip" of trauma and exacerbates Vicky's emotional issues. He testified that each notification is "extraordinarily distressing and emotionally painful" to Vicky and that Vicky suffers "each time an individual views an image

9

depicting her abuse." We are not "'left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)). Consequently, the district court did not clearly err in finding that McDaniel's possession proximately caused Vicky's losses.[2]

**AFFIRMED.**

---

[2] McDaniel seeks relief from his conviction under the Speedy Trial Act, 18 U.S.C. §§ 3161–74. He raises the issue for the first time on appeal. McDaniel waived his right under the Act because he failed to move for dismissal under the Act in the district court. *See* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to [relief under the Act].").

McDaniel also argues that the extensive delay in his prosecution was unduly prejudicial and violated his right to a fair and speedy trial under the Sixth Amendment. We review this argument for plain error because he did not make the argument in the district court, but instead argued only that there was a "due process violation." *See United States v. Hayes*, 40 F.3d 362, 364 (11th Cir. 1994). The Sixth Amendment speedy trial guarantee was no longer effective for McDaniel's original indictment once the district court dismissed it, *see United States v. MacDonald*, 456 U.S. 1, 7, 8–9, 102 S. Ct. 1497, 1501 (1982) (citation omitted) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, . . . no Sixth Amendment right to a speedy trial arises until charges are pending."), and McDaniel has failed to show actual prejudice from the thirteen-month delay between his second indictment and his trial.

McDaniel claims a "material witness" died in December 2007 and was therefore unable to testify because of the delay. But this alleged material witness died before McDaniel's re-indictment in June 2008, at a time when McDaniel's speedy trial rights were not in effect. Any prejudice resulting from this witness's death would be useful in a due process, but not speedy trial, analysis. *See United States v. Hicks*, 798 F.2d 446, 450 (11th Cir. 1986) ("[D]elay between dismissal of the earlier charges and subsequent arrest or indictment must be scrutinized under the due process clause."). McDaniel has failed to show actual prejudice and, for that reason, he has failed to show a plain error affecting his substantial rights.