[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 14-14124, 15-13321

_____

D.C. Docket No. 6:13-cr-00280-JA-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM EDWARD OSMAN,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(April 12, 2017)

Before TJOFLAT, HULL, and O'MALLEY,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

William Edward Osman appeals his restitution order, following his guilty plea to one count of production of child pornography, one count of distribution of child pornography, and one count of possession of child pornography. We affirm.

## I. FACTUAL BACKGROUND

### A. Convictions

On six separate occasions between December 2012 and September 2013, Osman sexually abused and molested his approximately one-year-old daughter, A.E., and used his cell phone to photograph his sexual abuse. In September 2013, Osman sent some of the child-pornography images he had created of A.E. to another individual, M.G., in exchange for child-pornography images of M.G.'s three-year-old daughter. In October 2013, agents from the Department of Homeland Security executed a search warrant at Osman's residence. Osman admitted to using the internet to search for child pornography; a forensic examination of Osman's electronic devices revealed at least 194 movies and 588 still images of child pornography as well as the images of A.E. and M.G.'s daughter.

A grand jury charged Osman with: (1) six counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Counts 1-6); (2) one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B), (b)(1) (Count 7); (3) one count of receipt of child pornography, in violation of 18

2

U.S.C. § 2252A(a)(2)(B), (b)(1) (Count 8); and (4) one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Count 9). Under a plea agreement, Osman pled guilty to one count of production of child pornography (Count 1), one count of distribution of child pornography (Count 7), and one count of possession of child pornography (Count 9). As part of the plea agreement, Osman agreed to make full restitution to A.E. under the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259. The district court sentenced Osman cumulatively to sixty years of imprisonment.

## B.    Restitution Hearing

At the restitution hearing, Osman argued the government's estimate of A.E.'s future counseling needs was speculative, given her very young age. The government acknowledged any estimate of damages and future counseling needs necessarily would be speculative to some extent in a case involving an infant victim but nevertheless asserted restitution was appropriate. In support of its position, the government called Sharilyn Rowland Petrie, a licensed counselor who specialized in work with child victims of sexual abuse and domestic violence.

Petrie testified she had been a licensed counselor for ten years and approximately eighty percent of her caseload involved victims of child sexual abuse. Petrie further stated she had worked with children at various developmental stages. Petrie testified she met with A.E.'s mother the day before the hearing and

3

discussed some of A.E.'s behavioral characteristics with her.  Petrie acknowledged any estimate she could give about A.E.'s future counseling needs would be based on predictions about the care A.E. likely would need, and was, thus, in some sense speculative.  But, Petrie testified that her opinion was based on many years of research about the consequences of early adverse life events and her extensive experience counseling victims of abuse.

Based on her professional experience and understanding of the standard continuum of treatment for a child sexual-abuse victim, Petrie's expert opinion was that A.E. likely will need future treatment.  The continuum of treatment Petrie described involves four different, age-appropriate stages.  The first is Eye Movement Desensitization and Reprocessing ("EMDR"); second, therapy at the second-grade level (seven or eight years old); third, therapy at puberty; and fourth, therapy when the victim is ready to marry or have a child.

Petrie explained there are two types of therapies available for victims of childhood sexual trauma—EMDR and cognitive behavioral therapy.  Because A.E.'s memories of the abuse initially would be stored in a nonverbal format because of her age at the time of the abuse, Petrie opined A.E. first would need EMDR treatment rather than cognitive behavioral therapy, because EMDR does not require the victim to be able to recall events in narrative form.  She explained, however, that young victims often needed additional courses of treatment because

it is difficult to identify all of their traumatic memories and triggers. A six-month course of EMDR treatment at a rate of $125 per hour would cost $3,250.

Petrie testified A.E. would need another stage of therapy between the ages of seven and eight, around the time she would be in second grade. At that point, A.E. would realize her family was different from other families, begin to have questions, and likely would start to exhibit emotional and behavioral disturbances. At that age, Petrie explained A.E. would be aware of her father's absence from the family and wonder why he was not there. Petrie also noted that, according to A.E.'s mother, A.E. already had begun asking about her father. Petrie further explained that she advises families to provide age-appropriate information to the child about the absent parent, including the reasons for his absence, rather than keep the abuse a secret from the child. Petrie explained that trying to keep the abuse a secret from the child can cause additional trauma when the child inevitably finds out about it later in life. Based on her conversations with A.E.'s mother, Petrie opined that A.E. likely would exhibit greater behavioral problems and require additional therapy at about the time she reaches the second grade. This opinion was, in part, based on the fact that A.E.'s mother told her that A.E. was already experiencing separation anxiety and intense reactions to stressors such as being touched. To Petrie, this indicated A.E. likely would manifest her anxieties through her patterns of behavior. Petrie stated A.E. would require six to nine

5

months of therapy at this stage; at $125 per hour, a nine-month course of treatment would cost $4,875.

Petrie then estimated that A.E. would require a third course of therapy in adolescence, when she reaches puberty and develops a greater understanding of sexual relationships and the nature of what had happened to her.  She explained that other children with whom she had worked at that stage developed "a new level of understanding and disturbances" regarding the sexual abuse they had suffered as a young child.  Petrie testified A.E. would need therapy for nine months to one year at this stage and stated a nine-month course of treatment at $125 per hour would cost $4,875.

Finally, Petrie explained that A.E. likely would need at least one more course of therapy, either when she is in the process of selecting a life partner or is on the verge of becoming a parent. Petrie explained that most people who have experienced childhood-sexual trauma will question their own ability to parent a child.  She explained that the duration of treatment needed at this stage would depend largely on how A.E.'s life progressed.  If A.E. maintains good relationships and does not suffer any other major trauma, she likely would need only three to six months of therapy, whereas a much longer course would be necessary if A.E. had difficult relationships and experienced other adverse life events.  Petrie therefore

concluded that six months of therapy was a "good estimate" for A.E. at that stage; at a rate of $125 per hour, that therapy would cost $3,250.

On cross-examination, Petrie explained that a victim of A.E.'s age at the time of the abuse (seven to fourteen months old) would remember the abuse as a "felt sense," rather than as words or images, because most memory prior to age three disappears from verbal recollection. She conceded that more painful or traumatic experiences may be recalled more vividly, but explained that lack of pain did not necessarily mean the memory was less likely to be retained. Petrie testified that she recommends that A.E. begin EMDR immediately to begin addressing her nonverbal memories of the abuse. She also reiterated that A.E. would need additional treatment at the second-grade-developmental stage, because EMDR therapy was unlikely to address fully A.E.'s traumatic memories. Petrie did acknowledge, however, that it was possible, though not likely, for a child to live a normal life after experiencing sexual abuse, even without therapy.

Following the restitution hearing, the parties submitted memoranda concerning their respective positions on restitution. In his memorandum, Osman argued that Petrie's testimony was speculative and not based on competent evidence. He noted Petrie's conclusions were based on only one meeting with A.E.'s mother, neither Petrie nor anyone else had evaluated A.E., and no evidence or medical records were presented. Osman further contended there was no

evidence the abuse in this case was a traumatic experience that A.E. would remember past the age of three and noted that Petrie had conceded children could suffer traumatic experiences without any lasting impact.  In addition, Osman contended restitution was proper only to the extent the defendant proximately caused the victim's losses and, he claimed, no losses had been shown in this case. Osman asserted the government had to demonstrate a present need for counseling on which the estimate for future treatment could be based to support a request for prospective restitution.  Osman argued it would be a violation of due process to award restitution based solely on speculative information and noted there is a process by which victims can seek restitution at a future time, when their losses become ascertainable.

     In response, the government argued the losses A.E. suffered were attributable directly to Osman.  Although Petrie acknowledged her estimate of A.E.'s future therapeutic needs was speculative, her conclusions were based on a substantial amount of research concerning the effects of early adverse-life experiences and Petrie's experience as a counselor of victims of childhood abuse. The government contended Petrie's testimony demonstrated A.E. would need counseling to address the harm caused by Osman.  The government requested a total of $17,875 in restitution for A.E.

### C.    District Court's Restitution Order

The district court ordered restitution for A.E. in the amount of $16,250.  The court determined that Petrie's testimony supported the imposition of restitution for A.E.'s future counseling costs.  The court explained that Osman's reliance on cases involving mere possession of child pornography to support his argument that the government had not established any losses proximately caused by his conduct was misplaced, because issues of causation are not present in production cases.  It is undisputed that Osman sexually abused A.E. and produced photographs memorializing the abuse; there was no question any losses A.E. suffered were caused directly by Osman.

The district court rejected Osman's arguments that the government had not established A.E. suffered any losses and that any need for future therapy was too speculative to support a restitution award.  Even if Osman was correct that restitution could not be awarded for future damages unless there was evidence of the victim's need for counseling at the time of the award, the court concluded that restitution was appropriate in this case because Petrie testified A.E. had a present need for EMDR therapy and could predict the need for additional therapy based on normal maturation patterns.  The district court pointed out that other courts have recognized the propriety of awarding restitution for future counseling costs in production cases and had done so based on evidence similar to that proffered by

9

Petrie.  Although Petrie did not meet with A.E., the court pointed out that Petrie did obtain a direct assessment of A.E.'s behavior from A.E.'s mother.  The district court concluded that the preponderance of the evidence supported the imposition of restitution for A.E.'s future counseling costs and that Petrie's testimony had provided a reasonable estimate of those losses.  The district court noted, however, that the government's requested restitution amount of $17,875 was inconsistent with the amounts Petrie estimated at the hearing, which totaled only $16,250.  The district court also concluded that the government's request for restitution predicated on the future counseling needs of A.E.'s mother was not supported by specific testimony with respect to any such needs and must, therefore, be denied.  Therefore, the district court limited its restitution award to $16,250.  Osman timely appealed.

## II.  STANDARD OF REVIEW

We review the legality of a restitution order in a child pornography case de novo and the underlying factual findings for clear error.  United States v. McDaniel, 631 F.3d 1204, 1207 (11th Cir. 2011).  We review de novo the legal conclusion of whether a person is a "victim," while "proximate cause is a factual finding we review for clear error."  Id. (quoting United States v. Robertson, 493 F.3d 1322, 1334 (11th Cir. 2007)).

## III.  DISCUSSION

### A.     Legal Principles

The Mandatory Restitution for Sexual Exploitation of Children Act, 18

U.S.C. § 2259, mandates that a district court order restitution for crimes involving

the sexual exploitation of children.  18 U.S.C. § 2259(a), (b)(4)(A).  Under that

statute, the restitution order "shall direct the defendant to pay the victim . . . the full

amount of the victim's losses as determined by the court."  Id. § 2259(b)(1).  A

victim's losses include any costs incurred for medical services relating to

psychological care.  Id. § 2259(b)(3)(A).  The Supreme Court has recognized that

the distribution of child pornography is "intrinsically related to the sexual abuse of

children," because "the materials produced are a permanent record of the children's

participation and the harm to the child is exacerbated by their circulation."  New

York v. Ferber, 458 U.S. 747, 759, 102 S. Ct. 3348, 3355 (1982).

Section 2259(b)(2) provides that an order of restitution under § 2259 shall be

issued and enforced in accordance with 18 U.S.C. § 3664.  18 U.S.C. § 2259(b)(2).

Under § 3664(e), any dispute regarding the proper amount or type of restitution

shall be resolved by the district court under the preponderance-of-the-evidence

standard.  18 U.S.C. § 3664(e); United States v. Baldwin, 774 F.3d 711, 728 (11th

Cir. 2014), cert. denied, 135 S. Ct. 1882 (2015).  If the victim subsequently

discovers further losses that were not ascertainable at the time of the original

11

restitution order, the victim may petition the court for an amended restitution order within sixty days of the discovery of those losses.  18 U.S.C. § 3664(d)(5).

The government bears the burden of proving the amount of loss the child victim sustained as a result of the sexual-abuse crime.  18 U.S.C. § 3664(e).  The government must demonstrate the amount of the loss "with evidence bearing 'sufficient indicia of reliability to support its probable accuracy.'"  United States v. Singletary, 649 F.3d 1212, 1217 n.21 (11th Cir. 2011) (quoting United States v. Bernardine, 73 F.3d 1078, 1080-81 (11th Cir. 1996)).  We have noted "the determination of the restitution amount is by nature an inexact science."  Baldwin, 774 F.3d at 728 (citation and internal quotation marks omitted).  Consequently, a district court "may accept a 'reasonable estimate' of the loss based on the evidence presented."  Id. (citation and internal quotation marks omitted).  Further, the government must only meet its burden by a preponderance of the evidence, which means the need for restitution is more likely than not to occur.  See id.

## B.    Future Therapy Costs

This Court has not addressed explicitly whether § 2259 permits an award of restitution for future therapy costs.  But see McDaniel, 631 F.3d at 1207, 1209 (upholding a restitution award that was based in part on the victim's future therapy needs without discussion).  Other circuits to have addressed this issue have concluded that restitution for future expenses, including therapeutic costs, is

12

appropriate under § 2259 as long as the award is based on a reasonable estimate of those costs.  See United States v. Rogers, 758 F.3d 37, 39-40 (1st Cir. 2014); United States v. Pearson, 570 F.3d 480, 486-87 (2d Cir. 2009); United States v. Danser, 270 F.3d 451, 455-56 (7th Cir. 2001); United States v. Julian, 242 F.3d 1245, 1246-48 (10th Cir. 2001); United States v. Laney, 189 F.3d 954, 966-67 (9th Cir. 1999).  Although § 3664 provides a mechanism by which victims can seek additional restitution at a later date, as the Ninth Circuit explained, resort to that procedure is necessary only where the victims' losses were not ascertainable at the time of the original restitution award.  Laney, 189 F.3d at 966-67.  When the victim's need for future counseling and the costs of such counseling can be ascertained, § 2259 permits a present award of restitution for those future losses. Id.

We are persuaded by our sister circuits and hold that a restitution order under 18 U.S.C. § 2259 may include restitution for future therapy expenses as long as the award reflects a reasonable estimate of those costs and is based on record evidence.  See United States v. Doe, 488 F.3d 1154, 1160 (9th Cir. 2007) ("We will uphold an award of restitution under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty."); Laney, 189 F.3d at 967 n.14 ("Of course, district courts must estimate the amounts that victims will spend on future counseling with

13

reasonable certainty, in accordance with the procedures set forth in 18 U.S.C. § 3664.").

## C.    Award for A.E.'s Future Therapy Costs

In Paroline v. United States, the Supreme Court considered "what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259." 572 U.S. __, __, 134 S. Ct. 1710, 1716 (2014). The defendant in Paroline was one of many individuals who possessed child-pornography images of the victim. Id. at __, 134 S. Ct. at 1717. The Supreme Court had to determine the extent to which the defendant was liable for the victim's overall losses as a result of his viewing and circulation of her images. Id. at __, 134 S. Ct. at 1717-18. The Supreme Court concluded restitution was proper under § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." Id. at __, 134 S. Ct. at 1722. In Paroline, because the defendant was only one of many possessors of a victim's image, the Supreme Court concluded it was impossible to trace all of the victims' losses to that defendant. See id. at __, 134 S. Ct. at 1727. Accordingly, the Supreme Court explained the district court should only order restitution in an amount that reflected the defendant's relative role in the "causal process" underlying the victim's losses. Id.

14

Osman's reliance on Paroline is misplaced. That decision has no bearing on his central argument—that the government failed to show A.E. suffered any losses from his conduct.  Paroline addressed the causal connection required to hold a single possessor of widely disseminated child-pornography images, far removed from the original abuse, liable for a victim's losses.  See id. at __, 134 S. Ct. at 1716-18.  It is undisputed Osman triggered the "causal process" underlying any losses suffered by A.E. because he perpetrated the abuse, produced the child-pornography images of her, and disseminated them.  See id. at __, 134 S. Ct. at 1727.  Osman's argument that the government has failed to establish that A.E. has, in fact, suffered any losses is an antecedent issue not raised in Paroline.  See id. at __, 134 S. Ct. at 1726 ("It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured.").

The district court did not err in concluding that A.E. has suffered a loss or in awarding restitution to A.E. for future counseling expenses needed to address that loss.  First, Petrie's testimony bears sufficient indicia of reliability to support its probable accuracy.  Singletary, 649 F.3d at 1217 n.21.  Petrie acknowledged her estimates of A.E.'s therapy needs necessarily were predictive because of A.E.'s very young age, but explained that those estimates were based on extensive

15

research concerning early adverse-life events, her ten years of experience counseling victims of child sexual abuse, and her discussion with A.E.'s mother. Although Petrie acknowledged it was possible a child like A.E. could live a normal life despite the sexual abuse she had suffered, she opined that was unlikely. There can be no doubt that A.E. eventually will learn of the abuse and her father's incarceration in connection with that abuse, either from her mother or through her own research; A.E. will need to learn to cope with the knowledge of both, and feelings of guilt arising therefrom.

Petrie's testimony also established that A.E. already had suffered and would continue to suffer losses from Osman's conduct, and Petrie provided reasonable estimates of A.E.'s therapeutic needs. Petrie testified EMDR therapy (the first stage) was presently recommended for A.E. to begin addressing her nonverbal memories of Osman's sexual abuse. Because of the difficulty of identifying and addressing all of the traumatic memories and possible triggers with a victim as young as A.E., Petrie explained that additional therapy likely would be needed at the second-grade-developmental stage (the second stage). Based on her conversation with A.E.'s mother, Petrie also testified A.E. already had exhibited behaviors, such as separation anxiety and sensitivity to touch, which indicated that she was more likely to have greater behavioral problems at the second-grade stage that would require counseling. While Petrie did not examine A.E., we are

16

confident that the mother of A.E., a two-year-old child, was the best possible source of information regarding A.E.'s behaviors. A.E.'s mother was with the child daily and already noticed A.E.'s averment to touch. The mother's constant interaction and observation offers more than an expert's two- or three-hour observation could.

In addition, Petrie expected A.E. would need further counseling in adolescence (the third stage), and explained that other children with whom she had worked at that stage had experienced a new level of insight into and disturbance regarding the sexual abuse they had suffered. At this third stage, Petrie noted the duration of therapy needed would depend on A.E.'s readiness and ability to cooperate, and Petrie estimated A.E. would need, at the low end, nine months of therapy. As noted earlier, Petrie testified that parents and other family members are advised not to withhold information about the abuse once the child is old enough to process that information, so as to avoid even greater psychological harm caused by feelings of mistrust. Thus, Petrie explained the question was not whether A.E. would learn of the abuse, only when.

Petrie last testified she expected A.E. would need a fourth course of therapy when selecting a life partner or starting her own family because "[m]ost people" who suffered childhood-sexual trauma such as A.E.'s will question their own ability to parent a child. Petrie acknowledged her estimate of the necessary

17

duration of treatment for A.E. at this fourth stage was the most uncertain because it largely would depend on how A.E.'s life progressed. If A.E.'s life experiences were relatively positive with no other major significant trauma, a course of three to six months would be appropriate, whereas a longer course of treatment might be necessary if A.E. experienced other traumas resulting from Osman's sexual abuse. In view of these variables, Petrie testified six months was "a good estimate" of A.E.'s needs at this fourth stage. We find that Petrie's testimony provided a reasonable estimate of A.E.'s losses by a preponderance of the evidence; the district court did not err in relying on that estimate in awarding restitution. 18 U.S.C. §§ 2259(b)(2), (3)(A), 3664(e); Baldwin, 774 F.3d at 728.

We are unpersuaded by Osman's contention that § 3664(d)(5) provides the appropriate remedy for A.E. As the Ninth Circuit explained in Laney, § 3664(d)(5) allows a victim to seek additional restitution for losses not ascertainable at the time of the original restitution award. See 18 U.S.C. § 3664(d)(5); Laney, 189 F.3d at 966-67. Because a reasonable estimate of A.E.'s future therapy needs is presently ascertainable, the district court properly included those costs in his restitution award under § 2259. In rejecting the same argument Osman makes here, the Seventh Circuit reasoned that: "We do not believe that Congress sought to create such a cumbersome procedure for victims to receive restitution. In enacting section 2259, it is clear that Congress intended to provide

victims of sexual abuse with expansive relief for 'the <u>full</u> amount of . . . [their] losses" suffered as a result of abuse." <u>Danser</u>, 270 F.3d at 455 (citing 18 U.S.C. § 2259(b)(3)(B)). We agree. <u>See</u> <u>McDaniel</u>, 631 F.3d at 1207, 1209; <u>Laney</u>, 189 F.3d at 966-67.

We are not dealing here with just the likelihood that a young child whose pornographic images are shared online will suffer residual effects from the reproduction of those images will need treatment. We are dealing with a child who was molested by her father, who will be informed of that fact, who will know that her father is absent from her life and suffering imprisonment based on that interaction. That is a heavy burden to place on a child. We cannot imagine that therapy will not be in order at the relevant times. Given the facts here, it seems that the need for future therapy is not just likely, but a virtual certainty.

**AFFIRMED.**