[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10595
Non-Argument Calendar
_____

D.C. Docket No. 0:19-cr-60264-KMM-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL TORRES-ROSALES,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 7, 2021)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Miguel Torres-Rosales (Torres) pleaded guilty to possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and received a within-guidelines sentence of 135 months' imprisonment. In challenging his sentence on appeal, Torres argues that the district court clearly erred by denying him a two-level minor-role reduction under U.S.S.G. § 3B1.2 and abused its discretion by denying his request for a downward variance. The denial of that downward variance, he says, resulted in an unreasonable sentence. We disagree and so affirm.

## I

### A

After receiving a tip from a confidential source (CS), Homeland Security Investigations and the Broward County Sheriff's Office began an investigation into drug trafficking. As part of the investigation, the CS had a number of conversations with Luis Armando Saldana-Hernandez (Saldana). The pair set up a drug deal, but that ultimately failed.

A new deal came together, however, this time involving Torres. The CS and Saldana agreed on a rate of $7,500 per pound of methamphetamine, and so, on September 11, 2019, Torres, Saldana, and Lucilia Salomon (Saldana's girlfriend) left Oklahoma for South Florida. When the trio arrived in Florida, they met with an affiliate of the CS. Unbeknownst to them, the CS's affiliate was an undercover

agent.  They explained to him that the methamphetamines were hidden in a Volkswagen Jetta.  Torres, a trained welder, then asked the undercover agent about getting access to certain welding tools that Torres needed to take apart the meth-laden Jetta.

Hours later, Torres, Saldana, and Solomon met up with the undercover agent again at a gas station before proceeding to another location where they planned to complete the exchange.  At that point, they were joined by the Jetta and its driver, Jose Eduardo Quintero-Lopez (Quintero).  The undercover agent led the group to another location, and there Torres dismantled much of the Jetta's interior with Quintero's assistance.  Torres and Quintero then took bundles of methamphetamines from the car into another room.  There, the undercover agent weighed them, and Solomon recorded the various weights of the packages.  After the undercover agent verified that the packages indeed contained methamphetamines, Torres and the others were arrested.  Law enforcement officials seized more than 13.4 kilos of methamphetamine with a substance purity of 98%.

In a post-arrest statement, Quintero explained that his cousin offered him $6,000 to drive the Jetta from Mexico to the U.S.  He said that Torres was the only person involved that he knew before the transaction.  He also said that on the night of the exchange, Torres had instructed him to go to the gas station where the group

3

from Oklahoma rendezvoused with the undercover agent and to follow them from there.  Torres offered no post-arrest statement.

A grandy jury indicted Saldana, Salomon, Quintero, and Torres for conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 (Count 1); and possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii) (Count 2).  Torres agreed to plead guilty to the latter in exchange for the dismissal of the former.  At sentencing, the district court noted that Torres's guidelines range was 135 to 168 months.  The court chose the low end of that range for Torres's sentence.

Torres now appeals that sentence.

## II

We first ask whether the district court clearly erred by denying Torres's request for a minor-role reduction under U.S.S.G. § 3B1.2.  Then we ask whether the district court abused its discretion by denying Torres's request for a downward

4

variance and thus gave him an unreasonable sentence. The answer to both questions is no.

## A

We review a district court's determination of a defendant's role in the offense for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). A clear error is one that leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. McDaniel*, 631 F.3d 1204, 1209 (2011) (quotation marks omitted). As long as the basis for the district court's decision was supported by the record and didn't involve a misapplication of the law, "it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." *De Varon*, 175 F.3d at 945. The district court may base its factual findings on undisputed facts in the presentence investigation report (PSI). *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009).

Pursuant to § 3B1.2, a defendant's offense level may be decreased by two levels if he was a "minor participant." U.S.S.G. § 3B1.2(b). A minor-role adjustment applies to a defendant who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n.5). The proponent of the adjustment bears the

burden of proving a minor role in the offense by a preponderance of the evidence. *De Varon*, 175 F.3d at 939.

The district court utilizes a two-pronged inquiry to determine whether a role reduction applies, considering all probative facts involving the defendant's role and evaluating the totality of the circumstances. *United States v. Wenxia Man*, 891 F.3d 1253, 1274 (11th Cir. 2018). It first considers the defendant's role in relation to "the relevant conduct for which he has been held accountable at sentencing." *Id.* (quotation marks omitted). Second, it considers the defendant's "role as compared to that of other participants in his relevant conduct." *Id.* (quotation marks omitted). To assist courts with this task, Amendment 794 to the U.S. Sentencing Guidelines added to the commentary for § 3B1.2 a list of non-exhaustive factors for a sentencing court to consider in determining whether to grant a minor-role deduction. U.S.S.G. Supp. App. C, Amend. 794. These factors include the "nature and extent of the defendant's participation" and the degree to which the defendant "understood the scope and structure of the criminal activity," "participated in planning or organizing the criminal activity," "exercised . . . or influenced the exercise of decision-making authority," and "stood to benefit." U.S.S.G.§ 3B1.2, comment. (n.3(C)). The commentary further notes that the fact that a defendant

6

performs an "essential or indispensable role in the criminal activity is not determinative." *Id.*

Not all participants are necessarily relevant to this inquiry, and the defendant's role is measured only against other participants involved in the relevant conduct attributed to the defendant. *De Varon*, 175 F.3d at 944. Further, district courts may look to other participants only to the extent that they are identifiable or discernable. *Id.* "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *Id.* Finally, the amount of drugs involved in a transaction may be a material consideration in assessing a defendant's role in his relevant conduct. *Id.* at 943. Specifically, a large amount of drugs in a defendant's possession may be the best indication of the magnitude of his participation in the criminal enterprise. *Id.*

In *Cruickshank*, we held that a categorical bar to granting a minor-role reduction for defendants transporting large amounts of drugs was legal error and reaffirmed our holding in *De Varon* that a minor-role reduction should be based on the totality of the circumstances. *United States v. Cruickshank*, 837 F.3d 1182, 1194–95 (11th Cir. 2016). In so reasoning, we noted that Amendment 794 didn't materially alter § 3B1.2, but rather, "clarified that a defendant could be considered for a minor-role adjustment in many circumstances, none of which turn on drug

quantity." *Id.* at 1195; *see* U.S.S.G. § 3B1.2, comment. (n.3(C)).  We made clear that district courts can consider drug quantity at sentencing, but this factor can't be the only factor used to determine the sentence.  *Cruickshank*, 837 F.3d at 1194–95; *see also United States v. Presendieu*, 880 F.3d 1228, 1250 (11th Cir. 2018).

Here, Torres was held accountable for only his involvement in the crime—*i.e.*, the possession with intent to distribute over 13 kilograms of methamphetamine.  *Beckles*, 565 F.3d at 843; *Man*, 891 F.3d at 1274.  In relation to that conduct, his role wasn't a minor one, nor was the district court's determination supported by one factor to the exclusion of all others.  He met with Saldana in Oklahoma, drove Saldana and Salomon most of the way to Florida, told Quintero to meet him at the gas station and follow him from there, and disassembled much of the Jetta's interior to access the hidden bundles of methamphetamine.  And he expected to benefit from all that work—he was set to be paid $6,000 for his role in the crime.  *Man*, 891 F.3d at 1274; *Beckles*, 565 F.3d at 843.  We again note that the sheer amount of drugs an individual possesses can be a material consideration in this inquiry, *De Varon*, 175 F.3d at 943, and here, Torres possessed over 13 kilos—nearly 30 pounds—of almost perfectly pure methamphetamine.  None of that suggests to us that the district court clearly erred on this front.

Comparing Torres's role in the offense to the others involved does nothing to change that conclusion. Take Salomon, the only one of Torres's codefendants who received a minor-role reduction. Though she also drove part of the way from Oklahoma to Florida, she did so because Saldana didn't have a driver's license. Moreover, she stood to receive a lesser benefit from the deal, getting only part of Saldana's cut. On the day of the sale, her only contribution was to record the weights of the drug bundles. Torres, in contrast, directed Quintero on the day of the deal, disassembled the Jetta, and expected $6,000 from the deal. As for Quintero, he was also sentenced to 135 months. Both he and Torres expected the same amount of money from the sale. And both played a key role in the deal— Quintero driving the Jetta from Mexico to Florida, and Torres cutting apart the interior of the Jetta using his welding skills. And Torres exercised some control over Quintero's movements on the day of the deal by telling him where to go (the gas station) and what to do (follow them from there to the next location). That comparison doesn't help Torres. Nor does looking at Saldana. Though Saldana had a prior tie to the CS and the buyer's side of the deal, Torres apparently provided the link to Quintero and the supplier's side. Looking at his co-conspirators, we can't say that Torres was "less culpable than most other participants in the criminal activity . . . ." U.S.S.G. § 3B1.2, comment. (n.5).

In sum:  The district court didn't clearly err in determining that Torres didn't merit a minor-role reduction.

**B**

In determining whether a sentence is reasonable, we review only for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "The party challenging [the] sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the [18 U.S.C.] § 3553(a) factors, and the substantial deference afforded [to] sentencing courts."  *United States v. Rosales Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).  We ordinarily expect a sentence within the guideline range to be reasonable.  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  Likewise, a sentence well below the statutory maximum indicates reasonableness.  *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

In reviewing the reasonableness of a sentence, we first consider whether the district court committed any procedural error, such as failing to calculate or improperly calculating the guideline range.  *Gall*, 552 U.S. at 51.  We ensure that the district court treated the Sentencing Guidelines as advisory, considered the § 3553(a) factors, didn't select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence.  *Id.*  Next, we consider the substantive

10

reasonableness of a sentence, taking into account the totality of the circumstances. *Id.*

On substantive-reasonableness review, we may vacate the sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). "[T]he district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of such a variance." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). The weight accorded to any one § 3553(a) factor is a matter "committed to the sound discretion of the district court," and it may attach "great weight" to one factor over others. *Rosales-Bruno*, 789 F.3d at 1254 (quotation marks omitted). The district court isn't required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence. *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007); *see also Gonzalez*, 550 F.3d at 1324 (similar).

As for procedural reasonableness, the only argument Torres offers on appeal depends on his assertion that the district court erred in denying his request for a

minor-role reduction. For the reasons given above, that wasn't error. Torres's sentence was thus procedurally reasonable.

Torres's 135-month sentence is also substantively reasonable. Even if the district court didn't expressly list the § 3553(a) factors it considered, the record reflects that the court considered those factors in its sentencing process. We've held before that "[a]n acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *Gonzalez*, 550 F.3d at 1324. Here, the district court expressly stated that it had "considered the statements of all parties, the presentence report which contains the advisory guidelines and the statutory factors as set forth in Title 18, United States Code, Section 3553(a)." Distilled, Torres's arguments express a disagreement with how the district court weighed the factors. But a defendant's mere disagreement with the district court's weighing of the § 3553(a) factors provides no basis for us to undo the work of the district court. *See United States v. Valnor*, 451 F.3d 744, 752 (11th Cir. 2006); *see also United States v. Saac*, 632 F.3d 1203, 1214–15 (11th Cir. 2011) ("It is within the district court's discretion to weigh the § 3553(a) factors, and we will not substitute our judgment in weighing the relevant statutory factors." (quotation marks and alterations omitted)).

Separately, Torres argues that the difference in sentences for "ice"—*i.e.*, methamphetamine that is at least 80% pure, *see* U.S.S.G. § 2D1.1 n.(C)—and

12

methamphetamine is much like the disparity in sentencing between crack cocaine and powder cocaine that Congress and the Sentencing Commission have addressed. *See, e.g.*, *Dorsey v. United States*, 567 U.S. 260, 264 (2012) (describing legislation that "reduc[ed] the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1"); *Dillon v. United States*, 560 U.S. 817, 821 (2010) (describing the 100-to-1 crack-to-powder ratio the Commission originally used in promulgating the guidelines and noting that after some time, the Commission "sought to alleviate the disparity produced by this ratio"). Whatever the merits of that analogy, it doesn't change the outcome here. Though of course the guidelines are only advisory, *see, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 91 (2007), we don't fault the district court for heeding that advice here. And in any event, even if we disregarded the distinction between ice and methamphetamine, the purity and quantity of the drugs involved here would have resulted in Torres receiving the same base offense level. *See* U.S.S.G. § 2D1.1(c)(1).

In short, Torres has failed to meet his burden to show that his sentence, which falls at the low end of the guideline range and well below the statutory maximum sentence of life-in-prison, is unreasonable. Accordingly, we affirm.

**AFFIRMED**.

13