[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10510

Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00523-JSM-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAVONTA HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 26, 2020)

Before WILSON, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Lavonta Hill was convicted in 2018 of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced Defendant to serve 64 months, an upward variance from the 30 to 37-month guidelines range recommended in the Pre-Sentence Report ("PSR").  Defendant appeals his sentence, arguing that the district court erred by considering hearsay testimony during his sentencing hearing and by overruling Defendant's factual objections to the PSR.  Defendant also argues that his sentence is substantively unreasonable under 18 U.S.C. § 3553(a).  We affirm.

## BACKGROUND

In November 2017, Defendant was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The indictment arose from an incident that occurred in St. Petersburg, Florida on January 25, 2017.[1]  Around 3:45 that morning, St. Petersburg police officers were dispatched to an area where patrol officers had heard gunshots.  The responding officers found Defendant lying on the ground in a liquor store parking lot, bleeding from gunshot wounds in his hand, arm, and head.  Defendant was briefly questioned by the officers, and he was taken to the hospital for treatment after denying any knowledge about who had shot him or where the shooting had occurred.

---

[1] Our description of the offense is based on the admitted-to factual basis for Defendant's guilty plea proffered by the Government at his change of plea hearing.

2

Remaining on the scene to investigate, the officers spoke to a witness who said the shooting began with two men arguing verbally about a woman and that the argument escalated into a fistfight and then a gunfight. The officers discovered a trail of blood that ran in front of a house in the area and ended in the liquor store parking lot where Defendant had been found. Outside the house where the blood trail began, the officers found a semiautomatic pistol and magazine clip under a bloody recycling bin, all of which (the pistol, clip, and recycling bin) contained Defendant's DNA. The officers ultimately determined that approximately 62 bullets had been fired during the shooting, at least two of which came from the pistol containing Defendant's DNA. Most of the other bullets were fired from two other guns, which the officers did not find.

The officers interviewed Defendant at the hospital two days after the shooting. During the interview, Defendant continued to deny any knowledge about who had shot him or why, and he denied possessing a gun or firing any shots. But based on the evidence collected during the investigation immediately following the shooting, and on Defendant's prior felony convictions for possession of oxycodone and grand theft, Defendant was charged with violating § 922(g)(1).

Defendant initially pled not guilty, and he was released on bond subject to home confinement and other conditions. Shortly thereafter, pretrial services notified the district court that Defendant had violated the terms of his release by

3

leaving his house.  Defendant was permitted to remain on bond on the condition that he provide a clean urine sample and submit to random urinalysis and GPS monitoring.  Defendant subsequently violated his home detention condition at least one more time, in addition to testing positive for marijuana and submitting a diluted urine sample in violation of his drug testing requirements.

The district court scheduled a bond revocation hearing for Defendant on January 24, 2018.  Defendant failed to appear at the hearing, and his attorney advised the court that he had not heard from Defendant since the previous day.  Pretrial services further informed the court that Defendant had again violated the conditions of his release by changing his residence without approval and by removing his monitoring equipment and that it deemed Defendant an absconder from supervision.  At the conclusion of the hearing, the court issued a warrant for Defendant's arrest.

Defendant remained missing until September 2018, when he was arrested in Pinellas County on charges of burglary and resisting an officer.  The day after he was released from jail on those charges, Defendant appeared before the district court for a second bond-revocation hearing.  During the hearing, pretrial services offered evidence of additional release violations committed by Defendant, including his failure to appear at the January 2018 bond revocation hearing and his commission of the burglary just a few days prior to the September 2018 hearing.

4

Defendant denied the latter allegation, noting that the burglary charge against him had been dropped. Nevertheless, the court found that Defendant had committed multiple release violations and revoked his bond.

Defendant subsequently pled guilty to the sole count in the indictment: possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). At his change of plea hearing, Defendant admitted the factual basis proffered by the Government. The initial PSR assigned Defendant a total offense level of 12 and a criminal history category of VI, resulting in a recommended guidelines range of 30 to 37 months and a maximum sentence of 120 months. The criminal history category reflected Defendant's 19 convictions for various crimes—including theft, trespass, drug possession, and resisting an officer—during the eight years since he turned 18. In addition to those convictions, the PSR listed as "other criminal conduct" Defendant's multiple arrests on charges that ultimately were not prosecuted, including arrests for battery, aggravated battery with a deadly weapon, cocaine possession, and criminal mischief.

The Government objected to the initial PSR, arguing that an April 2018 domestic dispute involving Defendant that required a police response, as well as the September 2018 incident that resulted in Defendant's arrest, should be added to the "other criminal conduct" section of the PSR. Pursuant to the Government's objection, the final PSR included a narrative of the April and September 2018

5

incidents as described in police reports and affidavits provided by the Government. Regarding the former incident, the narrative stated that on April 18, 2018, Defendant unlawfully entered his ex-girlfriend Jessica Harris's apartment and locked himself inside a storage area of the apartment when Harris asked him to leave. Harris called the police, but Defendant left before they arrived. As to the latter incident, the narrative stated that on September 5, 2018, Defendant went to his ex-girlfriend Yanira Avezuela-Rodriguez's house to get his things and broke the door of the house down after she asked him to leave. Avezuela-Rodriguez called the Pinellas County police, and the responding officer saw Defendant and ordered him to stop, at which point Defendant ran away. Defendant eventually was apprehended, arrested, and charged with burglary and resisting an officer without violence.

In its sentencing memorandum, the Government argued that an upward variance from the PSR's recommended guidelines range was warranted under 18 U.S.C. § 3553(a). In support of its argument, the Government emphasized that Defendant's offense involved not just possession of a firearm but a shooting in a residential neighborhood, and that Defendant had an extensive criminal history that continued unabated even while he was a fugitive from supervision. Given those facts, the Government urged the district court to apply the 120-month statutory maximum sentence. For his part, Defendant argued for a downward variance to a

sentence of 24 months, and he opposed any reliance on the "other criminal conduct" section of the PSR to enhance his sentence.

At the sentencing hearing, defense counsel confirmed that the facts set forth in the PSR concerning Defendant's offense in this case were accurate and stated that Defendant had no objections to the recommended guidelines calculation. The district court thus adopted the PSR's description of the offense and its calculations as to Defendant's offense level, criminal history category, and recommended guidelines range of 30 to 37 months. The court then considered Defendant's mitigation argument and his request for a downward variance. While admitting this was a "serious" case, defense counsel argued in mitigation that Defendant was the victim in the shooting that led to his conviction, that he had been shot multiple times and almost lost his life, and that only two of the bullets had been attributed to Defendant's gun. As to Defendant's history and personal characteristics, defense counsel acknowledged Defendant's extensive criminal record but suggested that this case—the first in which Defendant would be sentenced federally—was a "wake-up call" and an opportunity for Defendant to get his "act together." The court did not respond favorably to that line of argument, noting that Defendant had "seven wake-up calls in the last eight years and [that it saw] no likelihood of his so-called getting his act together."

Following the mitigation presentation, the court considered evidence proffered by the Government in support of an upward variance. The Government first presented testimony from Sergeant Joe Clester, who investigated the shooting underlying Defendant's conviction. Clester described the bullet casings, blood trail, and pistol containing Defendant's DNA that he found at the scene of the shooting, the damage to the surrounding property—including damage that resulted from bullets hitting houses, fences, trees, cars, and a wheelchair ramp leading up to a porch, among other things—and the details of Clester's interview of Defendant at the hospital after the shooting, during which Defendant was entirely uncooperative. Defense counsel did not object during Clester's testimony.

The Government next presented testimony from Deputy Demarcus Flournoy concerning the September 2018 incident. Defense counsel objected to Flournoy's testimony on grounds of relevance and lack of personal knowledge, but the district court overruled his objections. Flournoy testified that Defendant was arrested on September 5, 2018 for burglary and resisting an officer, and that he (Flournoy) had taken Defendant into custody and filed the arrest report for the burglary charge. Describing the circumstances of the arrest, Flournoy explained that he was dispatched on that day to an address where two men reportedly were fighting in the street. Flournoy stated that when he arrived at the scene, another officer told him that a suspect had run away and was hiding under a nearby bridge. Flournoy said

that he and the other officer had flanked the bridge and captured Defendant with the assistance of a canine, and then arranged for Defendant to be treated for a lip laceration that occurred during the incident.

Flournoy testified that he subsequently continued his investigation by talking to a witness who said that she had seen two men fighting in the street and that one of the men (Defendant) had run underneath a bridge upon the first officer's arrival at the scene. Flournoy said that he learned upon further investigation that the fight had started with a dispute between Defendant and his ex-girlfriend, Avezuela-Rodriguez. Flournoy stated that he decided to speak to Avezuela-Rodriguez, at which point defense counsel objected to Flournoy's continued testimony based on hearsay. The district court overruled the hearsay objection, and Flournoy described his conversation with Avezuela-Rodriguez and her current boyfriend, who was on the scene and involved in the incident. According to Flournoy, Avezuela-Rodriguez and her boyfriend reported that they were on their way home when they saw Defendant walking to Avezuela-Rodriguez's house and told him to leave. Instead of leaving, Defendant proceeded on to Avezuela-Rodriguez's house and broke the door down, at which point Defendant and the boyfriend began arguing outside.

The Government's third and final witness was Agent Scott Boshek, the ATF agent assigned to Defendant's case. Boshek testified that after Defendant was

arrested in September 2018, he searched for incident reports involving Defendant while he was missing from supervision, and he found the arrest report for the September 5, 2018 incident about which Flournoy testified and two additional incidents—one in April 2018 and one in July 2018—that involved domestic disputes between Defendant and his ex-girlfriend Harris. Defense counsel objected to Boshek's testimony on hearsay grounds, but the district court overruled the objection. Boshek then testified that, according to the April 2018 incident report, Defendant had argued with Harris and then refused to leave her house as requested, instead barricading himself in a storage unit outside the house. Harris called the police, but Defendant left before they arrived. Regarding the July 2018 incident, Boshek testified that the incident report indicated that Defendant had gone to Harris's house uninvited and again refused to leave as requested, and that he had "smashed" the phone out of Harris's hand when she called the police. Boshek admitted on cross-examination that he had only read the police reports, that he was not personally involved in any of the incidents he described, and that he was unaware if the April or July 2018 incidents had resulted in an arrest.

After considering all the evidence described above, the district court observed that Defendant was charged with simple possession but that his offense conduct was anything but simple possession, stating:

> It's more like the shootout at the O.K. Corral in the middle of a residential neighborhood with bullets in residential fences, and

handicap ramps leading up to porches, and the side and backs of different cars. I mean, it's just fortunate [Defendant] wasn't killed, but it's also fortunate that some of the neighbors weren't killed.

The court concluded that the circumstances warranted an upward variance, and explained that it would increase Defendant's offense level by fifty percent of the 12 levels applicable to an offense involving simple possession, resulting in a revised total offense level of 18 and an appropriate guidelines range of 57 to 71 months. The court concluded that a sentence of 64 months was appropriate, noting that Defendant's criminal history showed that "he continually fights with other people and is committing felonies and he's a danger to society." The court stated in closing that in arriving at its sentence, it had considered Defendant's arguments, the PSR, the recommended guidelines range, and the factors of 18 U.S.C. § 3553(a).

Defendant objected to the procedural and substantive reasonableness of his sentence and renewed his prior stated objections. Defendant now appeals his sentence, arguing that the district court erred by (1) overruling his objection to the use of hearsay evidence as a basis for applying an upward variance and (2) overruling his factual objections to the PSR. According to Defendant, the court's procedural errors led to its imposition of a substantively unreasonable sentence.

11

## DISCUSSION

### I.    Standards of Review

This Court reviews the reasonableness of Defendant's sentence under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  When conducting this review, the Court first considers whether the district court committed any significant procedural error such as "failing to calculate (or improperly calculating) the Guidelines range, . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*  Assuming the sentence is procedurally sound, the Court then considers whether the sentence is substantively reasonable under the "totality of the circumstances." *Id.*

In applying the above standard, the Court reviews the factual findings underlying the district court's sentencing determination for clear error and its application of the law to those findings de novo.  *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).  However, any factual and legal issues that were not raised below are reviewed only for plain error.  *United States v. Shelton*, 400 F.3d 1325, 1328 (11th Cir. 2005).  Under the plain error standard, the Court must affirm unless it finds that (1) an error occurred, (2) the error was plain, (3) the error affects the defendant's substantial rights, and (4) the forfeited error should be

12

noticed because it "seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Id.* at 1329 (internal quotation marks omitted).

## II.    Procedural Reasonableness

Defendant argues that his sentence is procedurally unreasonable because the district court relied on hearsay evidence to impose an upward variance without making any explicit findings as to the reliability of the evidence. Defendant also argues that the court procedurally erred by overruling his factual objections to the final PSR, particularly as to the narratives in the PSR concerning the April and September 2018 incidents, the first of which resulted in no charges and the second of which resulted in charges that were dropped. We are unpersuaded by either argument.

### A.    The district court did not err by considering hearsay testimony when sentencing Defendant.

The district court has wide discretion to consider relevant information at sentencing "without regard to [the] admissibility [of the information] under the rules of evidence applicable at trial." U.S.S.G. § 6A1.3(a). *See also Pepper v. United States*, 562 U.S. 476, 480 (2011) (noting that "sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence" (internal quotation marks omitted)). Pertinent here, the court may rely on hearsay evidence when sentencing a defendant so long as the evidence has adequate "indicia of reliability" and the defendant has an opportunity to rebut it.

13

*United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009).  To prevail on a challenge to a sentence based on the court's erroneous consideration of hearsay evidence, a defendant must show that the challenged hearsay is "materially false or unreliable."  *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010).  In addition, the defendant must show that the hearsay "actually served as the basis for [his] sentence."  *Id.*

Defendant did not object to Clester's testimony on hearsay grounds (or on any ground) during the sentencing hearing.  Thus, we review the district court's reliance upon Clester's testimony for plain error.  *See Shelton*, 400 F.3d at 1328.  Defendant cannot—and indeed does not even attempt to—meet the plain error standard.  Clester's testimony concerning his investigation of the shooting that led to Defendant's arrest in this case was entirely consistent with the PSR's description of the circumstances underlying Defendant's offense and the factual basis proffered by the Government for Defendant's guilty plea, both of which defense counsel agreed were accurate.   Defendant does not point to any evidence suggesting that Clester's testimony about the shooting was "materially false or unreliable."  *Ghertler*, 605 F.3d at 1269.

Defendant objected to Flournoy and Boshek's testimony on hearsay grounds during the sentencing hearing, meaning that we review the district court's reliance on their testimony for clear error.  *See Kinard*, 472 F.3d at 1297 n.3.  We find no

14

error with respect to Flournoy and Boshek's testimony, much less clear error.  *See*

*Ghertler*, 605 F.3d at 1267 (explaining that reversal is only warranted under the

clear error standard if we "are left with a definite and firm conviction that a

mistake has been committed" (internal quotation marks omitted)).  Defendant

acknowledges that he had an opportunity to cross-examine Flournoy and Boshek

and rebut their testimony during the sentencing hearing.  Defendant did not present

any evidence during his rebuttal to suggest that the April, July, or September 2018

incidents about which Flournoy and Boshek testified did not occur as described in

their testimony or that the testimony was otherwise "false or unreliable."  *Ghertler*,

605 F.3d at 1269.

Defendant's main issue seems to be that the district court did not make

explicit findings as to the reliability of Flournoy and Boshek's testimony.

Arguably, the court made such findings when it expressly overruled Defendant's

hearsay objections to the testimony.  But in any event, a sentencing court's failure

to make explicit findings as to the reliability of hearsay evidence does not require

reversal when it is apparent from the record that the evidence is reliable.  *See*

*Docampo*, 573 F.3d at 1098 (noting that the district court's failure to make explicit

findings as to the reliability of hearsay evidence "does not necessarily require

reversal or remand where the reliability of the statements is apparent from the

record" (internal quotation marks omitted)); *see also United States v. Baptiste*, 935

15

F.3d 1304, 1308 (11th Cir. 2019) (clarifying that hearsay evidence is permissible at sentencing so long as the overall record, not just the hearsay evidence itself, provides adequate indicia of reliability).  That clearly is the case here.

Most of Flournoy's testimony consisted not of hearsay but rather of events Flournoy personally observed in the course of arresting Defendant for burglary in September 2018.  Further, the parts of Flournoy's testimony that arguably did contain hearsay were corroborated.  For example, Flournoy testified that Avezuela-Rodriguez told him (Flournoy) that Defendant had refused to leave her house as requested, broken down the door to her house, and then fought with Avezuela-Rodriguez's boyfriend outside the house.  This testimony was corroborated by (1) an eyewitness's statement that she had seen two men fighting outside Avezuela-Rodriguez's house, one of whom ran away when an officer arrived on the scene, (2) statements from Avezuela-Rodriguez's daughter that she had heard Defendant bang on the door until it broke, (3) Defendant's own admission that he had gone to Avezuela-Rodriguez's house on the day in question to get his things and that her boyfriend had "started attacking" him, (4) another officer's statement that Defendant had run away when the officer arrived on the scene, (5) Flournoy's firsthand observation that he and the other officer were able to apprehend Defendant after pursuing him under the bridge where he was hiding, and (6) Flournoy's observation that Defendant required medical treatment for a cut on his

16

lip he received while trying to hide from the officers.  *See Docampo*, 573 F.3d at 1098-99 (concluding that corroborating statements established the reliability of hearsay testimony).

In contrast to Flournoy's testimony, most of Boshek's testimony was hearsay because it was based on his review of arrest affidavits and police reports describing Defendant's September 2018 arrest for burglary and resisting an officer and his involvement in domestic disputes in April and July 2018 that required a police response.  But again, Boshek's testimony concerning the September 2018 incident was corroborated by the testimony of Flournoy, who personally participated in the arrest, and by multiple other witnesses, in addition to Defendant's own statements about the incident.  As to the April and July 2018 domestic disputes, Defendant did not cite any evidence during the sentencing hearing suggesting that the arrest affidavits and incident reports underlying Boshek's testimony were "materially false or unreliable."  *See Ghertler*, 605 F.3d at 1269.  Neither did he present any evidence to rebut Boshek's account of the disputes, as derived from the affidavits and reports.

Furthermore, Defendant has not met his burden of showing that Boshek's testimony as to the April and July 2018 domestic disputes "actually served as the basis for [his] sentence."  *See id.*  On the contrary, it is evident from the district court's comments during the sentencing hearing that the court decided an upward

17

variance was warranted primarily because of the circumstances of Defendant's offense, namely, the fact that the offense involved a "shoot-out" in a residential neighborhood rather than simple possession of a gun. The court noted in closing that Defendant had an extensive criminal history and a propensity for "fight[ing] with other people" and "committing felonies." But that statement is an obvious reference to the circumstances underlying Defendant's offense and the September 2018 incident, both of which involved a street fight and a felony.

In short, Defendant has not provided any sound basis for reversing the district court's sentencing determination on account of the court's reliance upon hearsay evidence. Defendant did not object to Clester's testimony concerning the circumstances of his offense, and he does not come close to establishing that the court plainly erred by relying on that testimony. Neither does Defendant cite any evidence suggesting that Flournoy and Boshek's testimony as to the April, July, and September 2018 incidents—to the extent the testimony was based on hearsay—was "materially false or unreliable." *Ghertler*, 605 F.3d at 1269. Further, Defendant has not shown that the April and July 2018 incidents "actually served as the basis" for his sentence. *Id.* Accordingly, Defendant's hearsay argument fails.

18

**B.    The district court did not err by overruling Defendant's factual objections to the PSR.**

When a defendant objects to a fact set forth in the PSR, the Government has the burden to prove the disputed fact by a preponderance of the evidence. *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).  Defendant objected to the facts set out in the "other criminal conduct" section of the PSR concerning incidents that either did not result in charges against him or that resulted in charges that ultimately were dropped or dismissed, particularly the April and September 2018 incidents.[2]  Defendant argues on appeal that the district court procedurally erred by overruling his objections to the PSR's factual narrative concerning the April and September 2018 incidents, and by relying on those factual narratives to enhance his sentence, without requiring the Government to meet its burden of proving by a preponderance of the evidence that the incidents occurred.

As an initial matter, many of the "disputed" facts Defendant challenges in his appellate brief in fact relate to the circumstances underlying his offense in this case.  For example, Defendant points to alleged "inconsistencies between officers reporting the number of shell casings at the scene, [and] a[] lack of follow up and identification of witnesses" and he notes that Clester conceded on cross-

---

[2]  Prior to the sentencing hearing, Defendant also objected to the court's reliance on the facts set forth in ¶¶ 28-38, 42-46 and 48 of the "other criminal conduct" section of the initial PSR regarding additional unprosecuted conduct.  However, neither party discussed those facts during the sentencing hearing, and there is no indication the district court relied on them in sentencing Defendant.

19

examination that Defendant "had a right to defend himself."  Further, Defendant argues that the officers who investigated his offense "relied on unidentified witnesses" to describe the shooting that led to Defendant's arrest in this case. These facts are all related to the PSR's description of Defendant's offense in this case, which Defendant conceded was accurate.  As such, they provide no support for Defendant's argument that the district court procedurally erred by overruling his factual objections to the PSR or by failing to ensure that the Government met its burden of proving disputed facts by a preponderance of the evidence.

The only disputed facts in the PSR that arguably could have impacted Defendant's sentence involved the April and September 2018 incidents. The district court did not clearly err by finding that those facts were proven by a preponderance of the evidence.  As discussed above, Flournoy's testimony, which was corroborated by multiple witnesses and by Defendant's own statements, showed that Defendant more likely than not had broken down the door of Avezuela-Rodriguez's home on September 5, 2018 and then proceeded to fight in the street with Avezuela-Rodriguez's current boyfriend, fleeing from the first officer who responded to the scene until Flournoy arrived and the two officers, with the assistance of a canine, were able to apprehend Defendant under the bridge where he was hiding.  *See United States v. Osman*, 853 F.3d 1184, 1189 (11th Cir. 2017) (describing the government's burden under the preponderance of the

20

evidence standard as establishing a fact "more likely than not").  This is particularly true given Defendant's failure to present any evidence during the sentencing hearing to rebut Flournoy's account of the September 2018 incident.

Likewise, the arrest affidavits and police reports reviewed by Boshek established that Defendant more likely than not had engaged in a domestic dispute with his ex-girlfriend Harris in April 2018, during which dispute Defendant had refused to leave Harris's home and locked himself in a storage unit outside the home until Harris called the police.  Again, Defendant did not present any evidence during the sentencing hearing to rebut Boshek's testimony concerning the incident. The preponderance of the evidence standard is not "toothless," but neither is it difficult to meet when the only evidence presented falls on one side of the evidentiary scale.  *See United States v. Askew*, 193 F.3d 1181, 1183, 1185 (11th Cir. 1999) (explaining that the preponderance of the evidence standard is "not a high standard of proof" but that it is not satisfied when the evidence is in "equipoise").

Defendant again asserts that Flournoy and Boshek's testimony as to the facts underlying the April and September 2018 incidents is unreliable, such that it cannot establish those facts by a preponderance of the evidence.  But as discussed above, Defendant does not point to any evidence to support that assertion. Defendant notes that neither incident resulted in a state prosecution against him, as

no charges were filed concerning the April 2018 incident and the burglary and resisting an officer charges stemming from the September 2018 incident were dropped.  But the state's failure to charge or prosecute Defendant for the April or September 2018 incident does not negate the reliability of Flournoy and Boshek's testimony about those incidents.

Defendant also cites *Askew* for the principle that a sentencing court "may not abdicate its responsibility to ensure that the prosecution meets [the preponderance] standard before adding months or years onto a defendant's prison sentence." *Askew*, 193 F.3d at 1183.  In *Askew*, this Court held that the sentencing court had so abdicated its responsibility by applying a four-level increase to the defendant's offense level for stealing guns "with reason to believe [the guns] would be used in another felony" based solely on a U.S. Marshal's testimony that the type of guns the defendant stole were "commonly associated with street crimes."  *See id.* at 1182–83.  There is no indication that the district court made a similar error here, where the upward variance imposed by the court was based on (1) undisputed facts showing that Defendant's offense involved a shoot-out in a residential neighborhood rather than simple unauthorized possession of a gun, (2) Defendant's admittedly extensive criminal history and his continued failure to abide by the conditions of his release after his arrest in this case, ultimately resulting in Defendant absconding from supervision, and (3) disputed but unrebutted testimony

22

concerning a burglary and street fight that involved Defendant and that required a police response while he was a fugitive from supervision.

## III.    Substantive Reasonableness

Finally, Defendant argues that his sentence is substantively unreasonable. Defendant's substantive reasonableness argument is for the most part a reiteration of his procedural arguments. Defendant essentially contends the district court's procedural errors—including its reliance on disputed facts in the PSR and on hearsay evidence to impose an upward variance—ultimately resulted in a substantively unreasonable sentence. Having rejected Defendant's procedural arguments, we likewise reject his argument that the court's alleged procedural errors led it to impose a substantively unreasonable sentence.

To the extent Defendant implicitly argues that the district court erred in its application of the factors that are relevant to sentencing under 18 U.S.C. § 3553(a), we reject that argument as well. A sentencing court must consider all the applicable § 3553(a) factors, including, most pertinent here:  (1) the nature and circumstances of the offense and the defendant's history and characteristics, (2) the need for the sentence to reflect the seriousness of the offense, provide just punishment, and  protect the public from the defendant's further crimes, and (3) the applicable guidelines range. *See United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). But it is within the court's discretion to attach more weight to some

23

factors than others. *See id.* Furthermore, we review the sentencing court's application of the § 3553(a) factors deferentially, with due regard for that court's "institutional advantage" and "superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51–52 (internal quotation marks omitted).

The district court did not abuse its discretion in applying the § 3553(a) factors in this case. The court appropriately considered and gave significant weight to the nature and circumstances of Defendant's offense—which began with a verbal fight and escalated into a fistfight and then a gunfight during which at least 62 bullets were fired in a residential neighborhood, hitting houses, fences, trees, and cars—to increase Defendant's offense level by 50% of the level applicable to an offense involving simple possession. The court also properly factored in Defendant's criminal recidivism before he committed the offense— which resulted in 19 convictions for various crimes during an eight-year period— and his continued disregard the law after he committed the offense, as evidenced by Defendant's multiple release violations, his failure to appear at a court-ordered hearing and absconding from supervision, and his involvement in a burglary and street fight while a fugitive from supervision.

Defendant cites several countervailing factors, including his substance abuse history and his claim to have been a "victim" in the shooting that led to his arrest.

24

But it was reasonable—and certainly not an abuse of discretion—for the court to conclude that those factors were not significantly mitigating given the aggravating circumstances of Defendant's offense, his criminal history, and the fact that his unlawful conduct continued after he was arrested in this case. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." (internal quotation marks omitted)). This Court's task in a sentencing appeal is not to reweigh the § 3553(a) factors or supplant the judgment of the district court, but simply to ensure that the sentencing court's determination falls within "the range of reasonable sentences dictated by the facts of the case." *See id.* (internal quotation marks omitted). Defendant's 64-month sentence easily clears that hurdle under the circumstances.

In short, there is no basis for reversing Defendant's sentence on the ground that it is substantively unreasonable. Contrary to Defendant's argument, the upward variance imposed by the district court is not tainted by any procedural error. And it is apparent from the record that the district court properly considered all the applicable § 3553(a) factors, arriving at the upward variance by giving significant weight to the seriousness of Defendant's offense, his extensive criminal history, and his continued disregard for the law following his arrest in this case. Defendant's final sentence of 64 months is well below the 120-month statutory

25

maximum applicable to his offense, another indicator of reasonableness. *See*

*United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) ("A sentence imposed

well below the statutory maximum penalty is an indicator of a reasonable

sentence."). Again, this Court will set aside a sentence as substantively

unreasonable only "if we determine, after giving a full measure of deference to the

sentencing judge, that the sentence imposed truly is unreasonable." *Id.* at 655

(internal quotation marks omitted). That simply is not the case here.

## CONCLUSION

For the foregoing reasons, **AFFIRM** Defendant's sentence.