**UNITED STATES of America, Appellee,**

v.

**Susan L. ALLEN, Defendant–Appellant.**

**Docket No. 99–1167.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1999.

Decided Jan. 5, 2000.

Elizabeth Schenck, Seidenberg & Strunk, Syracuse, NY, for Defendant–Appellant.

Elizabeth S. Riker, Assistant United States Attorney, Northern District of New York, Syracuse, NY (Thomas J. Maroney, United States Attorney), for Appellee.

Before: CARDAMONE, CABRANES, and STRAUB, Circuit Judges.

**PER CURIAM:**

Defendant Allen appeals from a sentence imposed by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), following defendant-appellant Susan L. Allen's plea of guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. The District Court sentenced Allen principally to 24 months in prison and three years of supervised release, and ordered her to pay $268,212.33 in restitution. The Court arrived at that sentence after, *inter alia,* imposing on Allen two separate two-level enhancements under the Federal Sentencing Guidelines, for (1) abusing a position of trust; and (2) engaging in more than minimal planning. On appeal, Allen contends that the District Court erred both in applying these enhancements and in ordering her to pay restitution. We disagree and affirm the sentencing order of the District Court.

## I.

The following facts are taken from the defendant's plea agreement with the government and are undisputed. Susan Allen was hired as the Office Manager of ISIS Distributed Systems, Inc. ("ISIS") on July 1, 1990. She continued in this position after ISIS was acquired by Stratus Computer, Inc. ("Stratus") on December 17, 1993. Her employment with Stratus ended on December 8, 1995. While employed at ISIS and Stratus, Allen's duties included the preparation of the payroll and the payment of payroll taxes, as well as banking, budget preparation, purchasing, receiving, shipping, accounts payable, and other similar business activities.

During the course of her employment, Allen wrote personal checks on the ISIS account, issued unauthorized ISIS payroll checks to herself, and used the company credit card for personal expenses. To conceal this embezzlement of company funds, Allen destroyed canceled checks and al-

tered and falsified bank statements, payroll records, and credit card statements. In this manner, Allen stole over $260,000 from her employers. Her thefts were discovered only when she began requesting thousands of dollars for office expenses within a short period of time, prompting an internal review of the company's accounts. The review, in turn, led to an investigation and audit report which ultimately was turned over to the authorities for prosecution.

On August 11, 1998, Allen signed an agreement with the prosecution and entered a plea of guilty to one count of wire fraud. On February 24, 1999, the District Court held a sentencing hearing at which it found, *inter alia*, that Allen had possessed responsibilities and supervisory authority sufficient to warrant a two-level enhancement for abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3.[1] The Court also found that Allen's actions—to wit, her falsification of company records and her destruction of canceled checks— justified an enhancement for more than minimal planning, pursuant to U.S.S.G. § 2F1.1(b)(2)(A),[2] as defined in U.S.S.G. § 1B1.1, application note 1(f).[3] Based on these enhancements, the District Court sentenced Allen within the applicable Guidelines range, as described above. This timely appeal followed.

## II.

■ We review the District Court's interpretation and application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error. *See, e.g.,*

*United States v. Rivera,* 192 F.3d 81, 87 (2d Cir.1999).

■ Section 3B1.3 of the Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant abused a position of public or private trust, ... in a manner that significantly facilitated the commission or concealment of the offense." The term "public or private trust" refers to a position characterized by professional or managerial discretion—*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference. U.S.S.G. § 3B1.3, application note 1. It does not include positions such as that of an ordinary bank teller or hotel clerk, whose responsibilities are primarily non-discretionary in nature. *Id.*

■ Allen contends that the District Court misapplied U.S.S.G. § 3B1.3 in her case because her employment responsibilities were at most "secretarial" or "ministerial," and therefore devoid of the "professional or managerial discretion" necessary to constitute a position of trust. We disagree. An employee need not have a fancy title or be a "big shot" in an organization to qualify for an enhancement for abuse of a position of trust. Rather, applicability of a § 3B1.3 enhancement turns on "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Viola,* 35 F.3d 37, 45 (2d Cir.1994) (internal quotation marks and citations omitted). As Office Manager of ISIS, Allen had the authority to write company checks for payroll and other expenses, had control over the company's banking and its budget prepara-

---

1. Section 3B1.3 provides in relevant part:

    If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

2. Section 2F1.1(b)(2) provides in relevant part:

    If the offense involved (A) more than minimal planning, ... increase by 2 levels.

3. Application note 1(f) of U.S.S.G. § 1B1.1 provides in pertinent part:

    "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.

tions, and was authorized to use the company credit card. She had no regular or direct supervision. Thus, her case differs significantly from that of the "ordinary bank teller or hotel clerk" who is subject to penny-for-penny accounting at the end of each day. Rather, Allen possessed "broad responsibilities," which she used both to pilfer funds from her employers and to falsify records that could have exposed her wrongdoing. Accordingly, Allen's is a classic case for application of an abuse of trust enhancement. *See United States v. Jolly*, 102 F.3d 46, 49–50 (2d Cir.1996) ("[I]n the typical case where § 3B1.3 applies, the victim is a business and the defendant is an employee who has taken advantage of the knowledge and responsibilities acquired by virtue of his or her position within the company .... ") (internal quotation marks omitted).

Indeed, we have upheld the application of abuse of trust enhancements for defendants who possessed far less authority and responsibility than did Allen. *See, e.g., United States v. Laljie*, 184 F.3d 180, 195–96 (2d Cir.1999) (upholding abuse of trust enhancement for personal secretary who altered checks made payable to cash and tricked employer into signing checks made payable to her personal accounts); *United States v. Valenti*, 60 F.3d 941, 947 (2d Cir.1995) (treasurer of homeowner's association who used authority to manage checkbook and issue checks for less than $1000 to divert association funds to his personal account); *United States v. Castagnet*, 936 F.2d 57, 61–62 (2d Cir.1991) (airline junior station agent who used knowledge of computer access code to issue unauthorized tickets to himself).

■ Allen also contests the application of an abuse of trust enhancement in her case on the theory that her employer's failure to supervise her adequately, or to keep adequate records or perform audits, facilitated her crime and enabled her offenses to go undetected. Even if we assume, *arguendo,* that Allen's employers were remiss in their supervision and accounting, and that greater care on their part would have exposed Allen's thefts earlier, the fact remains that Allen used her access and control over the company's payroll, accounts payable, and credit card to embezzle funds from her employers. The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for her substantive offense, nor should it protect her from the imposition of an enhancement for abuse of a position of trust.

■ Allen further contends that the District Court's application of enhancements for both abuse of trust and more than minimal planning constitutes impermissible double counting, in that both enhancements allegedly were based on the repetitiveness of her acts of theft. We previously have rejected the argument that abuse of a position of trust and more than minimal planning are necessarily or inherently duplicative enhancements. *See United States v. Marsh*, 955 F.2d 170, 171 (2d Cir.1992). Moreover, Allen has failed to demonstrate that the District Court's application of the enhancements was duplicative in this instance. Contrary to Allen's assertions, the abuse of trust enhancement was based on Allen's use of her managerial discretion to pilfer company funds—not on the repetitiveness of the pilfering itself. The enhancement for more than minimal planning, on the other hand, was based *both* on the repetitiveness of Allen's thefts *and* on the planning entailed in the numerous affirmative steps—*e.g.,* destroying canceled checks, altering and photocopying bank statements, forwarding the altered statements to corporate offices—that Allen took to conceal her offenses. *See* U.S.S.G. § 1B1.1, application note 1(f) (" 'More than minimal planning' also exists if significant affirmative steps were taken to conceal the offense .... ").

■ Finally, Allen claims that the District Court erred in issuing a restitution order which, while consonant with the

amount stated in her plea agreement, "exceeded [her] ability to pay." This claim, too, is without merit. Title 18, U.S.C. § 3663(a)(3) explicitly provides that "[t]he court may ... order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *See also United States v. Mizrachi,* 48 F.3d 651, 656 (2d Cir.1995) (noting defendant's acquiescence in his plea agreement in upholding a restitution order). In her plea agreement, Allen agreed to pay "at least the sum of $260,854.00" and "acknowledge[d] that the sentencing Court may include an order of restitution in an amount greater than that set forth herein depending upon the proof available at the time of sentencing." Based on the evidence available at the time of sentencing, the District Court ordered Allen to pay restitution in the amount of $268,212.33. Allen's objection that the order was improper because she will not be able to pay the full restitution amount within five years is misguided. While it is true that § 3663 requires courts to consider the financial resources and earning ability of the defendant in fashioning a restitution order, *see* 18 U.S.C. § 3663(a)(1)(B)(i)(II), Judge Scullin satisfied this requirement by creating a monthly payment schedule that accounted for Allen's low earning potential both during her incarceration and upon her release.

### III.

For the reasons stated above, we affirm the sentence imposed by the District Court.