[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-12685

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JACK KACHKAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cr-20595-DPG-1

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

Jack Kachkar, the former CEO of a pharmaceutical company, was convicted and sentenced for eight counts of wire fraud. These convictions were based on a scheme to obtain millions of dollars in loan funds by providing fake proof of collateral to a bank. Kachkar now appeals his conviction, claiming reversible error in the jury instructions and the district court's evidentiary rulings. He also argues that, at sentencing, the district court erroneously applied the 18 U.S.C. § 3553(a) factors and two enhancements under the U.S. Sentencing Guidelines. Finally, he argues that the district court's restitution award violated the Sixth Amendment and was not supported by sufficient evidence. All these contentions fail, so we affirm.

## I. BACKGROUND

Jack Kachkar was the chairman and CEO of Inyx, Inc., a multinational pharmaceutical company. Under Kachkar's leadership, Inyx entered into written loan agreements with Westernbank, a Puerto Rican bank, in 2005. Mike Vazquez, the head of Westernbank's asset-based lending division, led the negotiations with Kachkar. Under the loan agreements, Inyx assigned its accounts receivable, in the form of customer invoices, as collateral.

In the regular course of business, Inyx would generate an invoice after a customer signed a purchase order called a quotation. But Kachkar instructed employees to generate invoices from

unsigned, falsified quotations as a way to inflate the collateral for the bank's loan. Inyx would then send these invoices to Western-bank, but not to its customers. Westernbank advanced millions of dollars in loan funds to Inyx based on this fake collateral.

Kachkar later transferred around $30 million from those funds to his personal bank accounts. He used this money partly to pay for luxury clothing, jewelry, high-end hotels, flights, and meals. He also paid an attorney, a home-building company, an aviation company, and a property tax collector.

After Westernbank became concerned about Inyx's ability to repay the loan, Kachkar assured Vazquez that the collateral was valuable and that he was seeking third-party financing to help pay the loan back. Kachkar argues that, to keep Inyx afloat, Vazquez informally agreed to continue funding Inyx in the meantime without regard for the collateral required by the loan agreements.

Eventually Inyx's vice president of finance blew the whistle on Kachkar's scheme. After he noticed an $80 million discrepancy between the company's internal records and the accounts receivable reports sent to Westernbank, he reported the discrepancy to Westernbank's executives. Alerted to the fraud, Westernbank called in the loan, was unable to collect on the property pledged as collateral, and lost over $140 million. Those losses caused the bank to report negative earnings in 2007, which made it harder to attract new investments and capital. Facing these and other troubles, the bank eventually closed in 2010.

As part of a fraud investigation, the U.S. Department of Justice requested a broad array of Inyx documents from Canada under a Mutual Legal Assistance Treaty. With the permission of a Canadian court and under the supervision of Canadian police, a group of Federal Deposit Insurance Corporation agents conducted a high-level review and claimed various boxes containing Inyx quotation documents. Canada sent those boxes to the United States, where officials catalogued and digitized the documents for efficient review.

Kachkar was indicted on nine counts of wire fraud under 18 U.S.C. § 1343. Before trial, Kachkar moved to suppress the Inyx documents obtained from Canada, arguing that the searches violated the Fourth Amendment. Adopting a magistrate judge's recommendation, the district court admitted the documents over Kachkar's objections.

At trial, the jury heard testimony from various employees of Westernbank and Inyx. One key government witness was Colin Hunter, who testified about Kachkar's role in creating the false invoices. To attack Hunter's credibility, the defense offered emails between Westernbank and its attorney concerning a settlement agreement encouraging Hunter to cooperate. But the district court excluded these emails as hearsay. Over Kachkar's arguments, it found that they did not fall under the business records exception in Federal Rule of Evidence 803(6) because litigation is not a regularly conducted activity for a bank.

The government also questioned representatives of Inyx's customers. Each of them examined the invoices supporting the wire fraud charges and stated that their companies had never received them or incurred the underlying obligations.

Later, Kachkar proposed a jury instruction concerning the meaning of a "scheme to defraud" under the wire fraud statute. The instruction was based on *United States v. Takhalov*, 827 F.3d 1307, 1311 (11th Cir. 2016), and would have added several paragraphs to the pattern wire fraud instructions:

> A "scheme to defraud" refers only to those schemes in which the defendant lies about the nature of the bargain itself. If the defendant has not lied about the nature of the bargain itself, he has not "schemed to defraud," and cannot be convicted of wire fraud on the basis of that lie alone.
>
> A scheme that does no more than cause their victims to enter into transactions that they would otherwise avoid is not a "scheme to defraud" that violates the wire fraud statute.
>
> . . . If the Defendant deceived someone to enter into a transaction but did not intend to harm the person he deceived, the Defendant has not schemed to defraud. This is so even if the transaction would not have occurred but for the deception. If there is no intent to harm, the scheme was to deceive, which is not wire fraud. Wire fraud requires an intent to defraud, which requires intent to harm.

A defendant may intend to deceive but not intend to defraud. If the falsity of the defendant's representations was not shown to be capable of affecting the victim's understanding of the bargain nor of influencing his assessment of the value of the bargain to him, there is no injury from the deception.

Misrepresentations amounting only to a deceit are insufficient to violate the wire fraud statute. Deceit must be coupled with a contemplated harm to the victim that affects the very nature of the bargain itself. Such harm is apparent where there exists a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered or intended to deliver.

You cannot convict a defendant of wire fraud based on misrepresentations that amount only to deceit. Even if a defendant lies and even if the alleged victim spent money because of that lie, you must acquit if you [sic] the alleged victim received exactly what they paid for.

Failure to disclose certain facts, in and of itself, is not sufficient to convict the Defendant of any offense.

The district court held a charge conference with the parties to discuss the jury instructions. Over the government's objection, the court agreed with Kachkar that the pattern instructions should be modified to incorporate *Takhalov*. But the court found

Kachkar's proposed instruction confusing. So it proposed a simplified instruction stating, "If the defendant deceived someone to enter into a transaction but did not intend to cause a personal gain for himself or a financial loss to the bank, the defendant has not schemed to defraud." Kachkar did not object to the court's simplified language, though he later objected to the omission of his own proposed instruction.

The district court ultimately gave its simplified version of Kachkar's proposed wire fraud instruction to the jury. It also instructed the jury that Westernbank's knowledge of the fraud and its motivation to profit from the loans were no defense. The jury convicted Kachkar on each charged count, but the district court granted Kachkar's motion for acquittal on one count.

During sentencing, the district court declined Kachkar's request that it consider the bank's negligence when analyzing the "nature and circumstances of the offense" under 18 U.S.C. § 3553(a)(1). Kachkar also offered a table showing sentences imposed on similar offenders, which the district court did not explicitly adopt in its consideration of Section 3553(a)(6).

When calculating the guidelines range, the district court applied a four-level enhancement under United States Sentencing Guidelines Manual § 2B1.1(b)(17)(B)(i) because Kachkar "substantially jeopardized the safety and soundness of a financial institution." It also applied a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(iii) because the offense "resulted in substantial financial hardship" to the bank. But out of double-counting concerns,

the court ultimately included only a four-level enhancement in its calculations. It calculated the guidelines range at 324–405 months and imposed a sentence of 360 months.

The district court also ordered Kachkar to pay restitution to the FDIC as receiver for Westernbank under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. Relying on victim loss calculations prepared by the FDIC, the court awarded an amount of $103,490,005. Kachkar timely appealed, seeking vacatur of his conviction, or alternatively, vacatur of his sentence with remand for re-sentencing.

## II. DISCUSSION

Kachkar attacks his conviction on three grounds. First, he argues that the district court incorrectly instructed the jury on wire fraud. Second, he argues that the searches of Inyx quotation documents seized in Canada violated the Fourth Amendment. Third, he contends that the district court abused its discretion by excluding emails concerning a settlement agreement with Colin Hunter.

He raises three more grounds for vacating his sentence. First, he argues that the district court wrongly excluded evidence from its analysis of the Section 3553(a) factors. Second, he argues that it erroneously applied sentencing enhancements. Third, he argues that the district court's restitution award violated the Sixth Amendment and was based on insufficient evidence. We address each of these issues in turn.

### A.    Jury Instructions

At trial, Kachkar proposed a multi-paragraph jury instruction for wire fraud stating in part, "If the Defendant deceived someone to enter into a transaction but did not intend to harm the person he deceived, the Defendant has not schemed to defraud." Finding Kachkar's instruction confusing, the district court instead instructed the jury that Kachkar did not scheme to defraud if he "did not intend to cause a personal gain for himself or a financial loss to the bank." It also offered two supplemental instructions. One stated that the bank's knowledge of the fraud was no defense. The other stated that the bank's motive to profit from the loan transactions was no defense. Kachkar asserts error in the rejection of his proposed instruction, as well as in the court's three instructions. "We review for an abuse of discretion a district court's refusal to give a requested jury instruction." *United States v. Takhalov*, 827 F.3d 1307, 1311 (11th Cir. 2016). We review the legal correctness of a jury instruction *de novo*. *Id.*

### 1.    Kachkar's Proposed Instruction

We will start with the jury instruction that Kachkar wanted and that the district court denied or, more accurately, modified. We review this question for an abuse of discretion. *See United States v. Waters*, 937 F.3d 1344, 1353 (11th Cir. 2019). We will reverse a district court's rejection of a proposed instruction that "(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important

that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Eckhardt*, 466 F.3d 938, 947–48 (11th Cir. 2006).   Even assuming Kachkar's proposed instruction satisfied the first two elements of this test and assuming Kachkar preserved an objection to the denial of his proposed instructions, we cannot say that the district court's refusal to give it seriously impaired his ability to conduct a defense.

Kachkar's proposed instruction was based on this Court's decision in *United States v. Takhalov*, 827 F.3d at 1312–14. In *Takhalov,* the government prosecuted bar owners who hired women known as B-girls to pose as tourists so that men would want to come to their establishments and buy drinks. *Id.* at 1310. The government alleged that this scheme, in and of itself, was fraudulent, even if the men received the drinks they ordered. *Id.* at 1311. The defendants disagreed and proposed a jury instruction stating that the "failure to disclose the financial arrangement between the B-girls and the Bar, in and of itself, is not sufficient to convict a defendant of wire fraud." *Id.* at 1314 (cleaned up). We agreed with the defendants and our holding was simple: this instruction was a correct statement of the law. *Id.* at 1316. We also stated that one can "scheme to defraud" under Section 1343 only if he "intend[s] to harm the victim." 827 F.3d at 1313. And we reasoned that a defendant displays such intent if he "lies about the nature of the bargain itself," usually by misrepresenting "the price" or "characteristics of the good," so that the victim does not receive "what he bargained for." *Id.* at 1313–14. In that case, nothing about the

undisclosed financial arrangement between the bars and the B-girls went to the nature of the bargain between the men and bars—cash for drinks—so we held that there was not necessarily an intent to harm. *Id.* at 1314–15.

Incorporating multiple paragraphs of general principles from the *Takhalov* opinion, Kachkar's proposed instruction stated that the difference between mere deceit and a scheme to defraud is "intent to harm." It further stated that a defendant displays such intent if he "lies about the nature of the bargain itself." The district court agreed with Kachkar to incorporate *Takhalov* into the jury instructions, but it did not use the multi-paragraph proposal that Kachkar requested because it found it "confusing."

We cannot say that the district court's decision not to use Kachkar's proposed language substantially impaired Kachkar's trial defense. Unlike in *Takhalov*, Kachkar's defense was not that he had tricked the bank but, nonetheless, provided them all that they had bargained for. Instead, he argued that he did not harm the bank by falsifying collateral because the bank's management did not care about, and then waived, its collateral requirements. This defense does not primarily concern the difference between fraud and deceit; it asserts that the collateral was not material to the bank's decision to issue the loans. The district court separately instructed the jury on materiality as an element of wire fraud. So Kachkar's defense regarding the bank's collateral requirements did not depend on *Takhalov* at all.

As another component of his defense, Kachkar argued that he lacked intent to harm the bank because he sought out third-party financing to repay the loan. But this defense does not implicate *Takhalov* either. Under *Takhalov*, the term "harm" does not necessarily refer to a long-term financial loss on the part of the victim. *See* 827 F.3d at 1313–14. Instead, a "harm" occurs when the misrepresentation affects the victim's understanding of the nature or value of the bargain. *Id.*; *Waters*, 937 F.3d at 1353–54. If a defendant intends to make such a misrepresentation, it does not matter whether he intends to make up for any loss later. It is therefore irrelevant for purposes of *Takhalov* that Kachkar intended to secure third-party repayment on the loan. Accordingly, we cannot say the district court reversibly erred by modifying Kachkar's proposed instruction.

## 2.    District Court's Instructions

Now we turn to the jury instructions that the district court gave instead. We will reverse because of a given jury instruction only if it (1) was legally inaccurate or "improperly guided the jury" in a way that violated due process, and (2) was not "harmless error." *United States v. Focia*, 869 F.3d 1269, 1280 (11th Cir. 2017) (quoting *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012); *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000)). "An error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *House*, 684 F.3d at 1197).

The district court found Kachkar's instruction confusing, so it replaced it with a *Takhalov* instruction of its own: "If the Defendant deceived someone to enter into a transaction but did not intend to cause a personal gain for himself or a financial loss to the bank, the Defendant has not schemed to defraud." Kachkar argues that the disjunctive "or" would permit the jury to find him guilty if he intended only a personal gain, even one that caused no loss to the bank. He thus contends that the instruction (1) allowed his conviction on an invalid basis, and (2) nullified his so-called *Takhalov* defense.

Kachkar failed to object to the proposed language on the specific grounds he raises on appeal, so we will reverse only if the instruction amounted to plain error. We conclude that it did not.

The day after the district court sent the final draft of its jury instructions to the parties, it asked them if they had any objections to the wire fraud instruction. With respect to the portion of the instruction at issue here, Kachkar's attorney simply maintained that the court should "instruct the jury as to the offense as we submitted prior." We read this as a general objection to the court's refusal to use the proffered instruction, not as an objection to the court's use of disjunctive language. Kachkar's attorney never argued to the district court—at the charge conference or after the court instructed the jury—that it should not have used disjunctive language. And "[w]hen a defendant objects to a jury instruction in the district court, but on different grounds than the ones he raises on appeal, we review the instruction for plain error." *United States*

v. *Baston*, 818 F.3d 651, 661 (11th Cir. 2016). For us to find plain error, "there must be: (1) error, (2) that is plain, and (3) that has affected the defendant's substantial rights." *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2015). An error affects the defendant's "substantial rights" when "there is a reasonable probability of a different result absent the error." *Id.* at 1325.

Here, we are satisfied beyond a reasonable doubt that the district court's use of the disjunctive "or" did not contribute to the jury's guilty verdicts. For this reason, we conclude both that any error in the instruction did not affect Kachkar's substantial rights, and that it was harmless. *See id.*; *Focia*, 869 F.3d 1269, 1280. Kachkar argues that by using the disjunctive "or," the instruction allowed the jury to convict him even if he did not intend to harm the bank, as long as he intended some gain from the transaction. But, unlike in *Takhalov*, there is no question that Kachkar's misrepresentations went to the "nature of the bargain itself," and therefore harmed the bank if they misled the bank into entering into the transaction. *Takhalov*, 827 F.3d at 1313. Specifically, the value of Inyx's accounts receivable was substantially lower than what Kachkar represented to the bank. This $80 million discrepancy in collateral is not comparable to the allegedly harmless deception in *Takhalov*. The government also submitted extensive evidence that the bank was harmed by issuing the loan. And, unlike in *Takhalov*, Kachkar's defense was that the bank's management did not care about the collateral requirements, and that he intended to get help paying back the loan later. The district court gave

instructions that allowed Kachkar to make those arguments. *See Waters*, 937 F.3d at 1355. So the district court's wire fraud instruction did not amount to plain error. The instruction therefore does not constitute grounds for reversal.

As for the two supplemental instructions, the district court's language was legally correct. The first instruction said, "Whether the financial institutions in this case knew or should have known that submissions to the financial institutions were fraudulent, if at all, is not a defense." The second one stated, "Whether the financial institutions were motivated by profit or did, in fact, profit from the loans or other transactions involved in this case also is not a defense." Kachkar argues that these instructions undermined his defense because the bank's knowledge and profit motive bore on his intent to defraud.

Both supplemental instructions accurately reflect the law for the same reason: the fraud statute looks to only the defendant's state of mind. *See* 18 U.S.C. § 1343. We have, along with other circuits, shunned attempts to account for the victim's subjective knowledge or intent in fraud cases. *See United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *see also United States v. Lindsey*, 850 F.3d 1009, 1014–15 (9th Cir. 2017); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980).

We do note that, unlike in those cases, Kachkar is not claiming the bank's negligence or profit motive are a defense. Rather, he asserts that his perception of the bank's knowledge and profit motive affected his subjective intent. But the district court's supplemental instructions stated only that neither the bank's knowledge nor profit motive was itself "a defense." Thus, the instructions did not preclude the jury from considering either fact in relation to Kachkar's state of mind or the materiality of his lies.

### B.      Search of Canadian Documents

Kachkar further argues that the district court erred in denying his motion to suppress Inyx quotation documents seized in Canada and searched without a warrant in the United States. He argues that, under the "private search" doctrine, see United States v. Odoni, 782 F.3d 1226, 1238 (11th Cir. 2015), the search in the United States violated the Fourth Amendment by exceeding the scope of the Canadian search.

Even assuming—without concluding—that the search violated the Fourth Amendment, the admission of the quotation documents was harmless error. A constitutional error is harmless when, "beyond a reasonable doubt," it did not contribute to the verdict obtained. United States v. Leonard, 4 F.4th 1134, 1144 (11th Cir. 2021) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

The crux of the prosecution's case was that Kachkar fraudulently provided Westernbank fake invoices to obtain more loan funds. The prosecution proved this point partly by relying on the

underlying quotations that, testimony showed, led to the creation of the invoices. The quotations were never provided to the bank. And various Inyx employees testified from personal knowledge about Kachkar's and his subordinates' roles in creating fake quotations and invoices without notifying customers. Each customer was shown the invoices, which supported the wire fraud charges, and which were not challenged on Fourth Amendment grounds by Kachkar. The customers stated that their companies had never received them or incurred the underlying obligations. None of the customer testimony hinged on the supposedly problematic quotations, which had led to the creation of the invoices.

In sum, the Inyx employees provided a general view of the fraudulent invoice scheme, and the customers' representatives proved that the specific invoices supporting the criminal charges were fruits of that scheme. Combined, this testimony provides overwhelming evidence of Kachkar's guilt such that there remains no reasonable doubt that the quotations did not contribute to his conviction. *See Leonard*, 4 F.4th at 1144; *United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002).

### C.     Exclusion of Emails

Kachkar next argues that the district court erred by excluding as hearsay five emails between Westernbank and its attorneys about settling civil fraud allegations against Colin Hunter, an Inyx executive and government witness. He first asserts that those emails were admissible business records. Alternatively, he

contends that excluding the emails violated his constitutional right to present a complete defense. "We review a district court's evidentiary rulings for abuse of discretion." *United States v. Hernandez*, 906 F.3d 1367, 1369 (11th Cir. 2018).

### 1.    Business Records Exception

Kachkar argues that the district court abused its discretion by finding that the emails were not "kept in the course of a regularly conducted activity," as required under the business records exception. *See* FED. R. EVID. 803(6). He argues that the emails concerned a lawsuit to collect on an outstanding loan, which he says is a routine business activity. In response, the government argues that Kachkar sought admission of only two emails, thus failing to preserve any error concerning the other three.

We first address the preservation issue—Kachkar's counsel adequately proffered all the emails to the district court. "A party may claim error in a ruling to . . . exclude evidence only if . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." FED. R. EVID. 103(a); *see also United States v. Quinn*, 123 F.3d 1415, 1420 (11th Cir. 1997) ("Rule 103(a)(2) does not require that a formal offer of proof be made to preserve an objection."). Both the court and defense counsel referenced all the emails collectively before the court ruled that they were inadmissible. So the substance of the emails was apparent to the district court and Kachkar properly preserved his claim of error.

Turning to Rule 803(6), we conclude that the district court did not abuse its discretion by excluding the emails. To be sure, a party to the emails testified that he received them in the course of his business activities at Westernbank. But the emails concerned a civil fraud action against an Inyx employee, not the bank's regular business activity. Kachkar submits that Westernbank was regularly involved in litigation, but he cites litigation concerning only debt collection on outstanding loans, not civil fraud. "Many business-related emails will be stored forever in electronic purgatory. But absent a showing that the emails were kept for future, business-related reference, the showing required for Rule 803(6)(B) will be lacking." 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 6864 (2022 ed.). The district court was within its discretion to exclude the emails as inadmissible hearsay outside the business records exception.

### 2.　　Constitutional Argument

Kachkar also contends that the exclusion of the emails violated his constitutional right to present evidence impacting the credibility of an important government witness. He cites *United States v. Hurn*, where we held that a rule of evidence is not dispositive when its application violates the Compulsory Process or Due Process Clauses. 368 F.3d 1359, 1363 n.2 (11th Cir. 2004). But as we later observed in *United States v. Mitrovic*, our discussion in *Hurn* presupposed "either state evidentiary rulings or an abuse of discretion by the trial court in applying a particular federal rule." 890 F.3d 1217, 1222 n.2 (11th Cir. 2018); *see also Hurn*, 368 F.3d at 1363 n.2,

1366 (citing *Knight v. Dugger,* 863 F.2d 705, 729 (11th Cir. 1988); *United States v. Davis*, 639 F.2d 239, 244–45 (5th Cir. Unit B 1981); *Mills v. Estelle*, 552 F.2d 119, 122 (5th Cir. 1977)). Neither this Court nor the Supreme Court "has [ever] overturned a district court's proper application of a *Federal* Rule of Evidence as violating" a defendant's constitutional right to present a complete defense. *Mitrovic*, 890 F.3d at 1222 (footnote omitted) (emphasis added). And the federal hearsay rules, when properly applied, specifically do not violate an accused's right to present a complete defense. *Id.*

Regardless, even assuming the proper application of the Federal Rules of Evidence could, in a certain case, violate a defendant's right to present a complete defense, we cannot say that the district court's decision to exclude these emails violated Kachkar's constitutional rights. Other witnesses testified generally to the negotiations between the bank and Inyx executives to resolve the bank's fraud claims against the executives. And Kachkar was allowed to cross-examine Hunter about whether his testimony was affected by the bank's civil fraud claims.

### D.    Sentencing

Kachkar argues that the district court committed three errors at sentencing. First, he argues that it improperly applied the sentencing factors in 18 U.S.C. § 3553(a). Second, he argues that the court clearly erred by applying sentencing enhancements. Third,

he argues that the court wrongly awarded restitution damages to the bank.

### 1.      Sentencing Factors

Regarding the sentencing factors in Section 3553(a), Kachkar contends that the court should have considered the bank's negligence relating to the "nature and circumstances of the offense" under Subsection (a)(1). He also asserts that, under Subsection (a)(6), it should have considered a table showing sentences imposed on other fraud offenders. Kachkar frames these alleged errors as procedural in nature. But a district court's decision to consider evidence in its Section 3553(a) analysis is substantive, and we review it for abuse of discretion. *See United States v. Fox*, 926 F.3d 1275, 1278, 1282 (11th Cir. 2019).

### a.      Nature and circumstances of the offense

The district court did not abuse its discretion by refusing to consider Westernbank's negligence in its analysis of the "nature and circumstances of the offense" under Subsection(a)(1). Kachkar argues that this factor broadly covers a victim's wrongful conduct, much like the doctrines of contributory negligence or comparative fault in tort law. He also analogizes it to certain federal sentencing guidelines, which permit departures based on a victim's conduct and characteristics. *See* U.S.S.G. §§ 3A1.1(b), 5K2.10. And he argues that, in 18 U.S.C. § 3661, Congress "separately declined to place any limitations on the information that sentencing courts may consider with respect to a defendant's conduct."

We acknowledge that the language of this factor is facially broad. *See Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). But there is no clear mandate—in Subsection (a)(1) or elsewhere—that a court must give weight to the victim's negligence in its analysis. Kachkar cites the sentencing guidelines concerning the victim's vulnerability and role in provoking a crime, which are distinct issues from the victim's negligence. *See* U.S.S.G. §§ 3A1.1(b), 5K2.10. And Congress only foreclosed limitations on the background information that "a court of the United States *may* receive and consider" at sentencing. 18 U.S.C. § 3661 (emphasis added). It did not *require* a court to consider such information. The district court therefore acted within its discretion by refusing to consider the bank's negligence in its Section 3553(a) analysis.

b.    Sentencing Disparities

Neither did the district court abuse its discretion under Subsection (a)(6) by disregarding a table showing the sentences imposed on other fraud offenders. That factor requires a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

As an initial matter, the district court here never explicitly dismissed Kachkar's sentencing table at all. Granted, it imposed a 360-month sentence, which was higher than any sentence reflected on the table. And it said that uninformed case comparisons were "really not helpful." But the court did not reject the table from

consideration, and it stated that it "considered the statements of all parties . . . and the statutory factors" before delivering its sentence.

All the same, any failure by the court to consider the table was not an abuse of discretion under Subsection (a)(6). "A well-founded claim of disparity . . . assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005)). For each case, the table showed the crime of conviction, the guideline range, the loss amount, and whether the defendant pleaded guilty. But it omitted the details of the defendants' conduct and whether any guidelines enhancements were applied. Of course, this Court has rejected "[a]ny requirement that the record in other cases be scoured before the sentences in those cases can be considered." *United States v. Irey*, 612 F.3d 1160, 1221 n.42 (11th Cir. 2010). But in *Irey*, we still surveyed the offensive conduct in other cases to determine whether it was comparable. *Id.* at 1219–21. Because Kachkar's table did not include such details, the district court could not be confident that the table represented a true "apples-to-apples" comparison. So even if the district court had explicitly rejected the table from consideration, we could not say doing so was an abuse of discretion.

## 2.    Guidelines Enhancements

Kachkar argues that the district court erred twice when applying enhancements under the Sentencing Guidelines. First, he argues that a four-level enhancement under U.S.S.G.

§ 2B1.1(b)(17)(B)(i) did not apply because he did not "substantially jeopardize[] the safety and soundness of a financial institution." Second, he contends that the court recited factors from the wrong Application Note when applying a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(iii). We review the district court's factual findings for clear error, and we review its application of those facts to justify an enhancement *de novo. United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) (quoting *United States v. Creel,* 783 F.3d 1357, 1359 (11th Cir. 2015)).

### a.    Four-level enhancement

The district court did not commit clear error by finding that Kachkar "substantially jeopardized the safety and soundness of a financial institution," thus triggering the four-level enhancement under Section 2B1.1(b)(17)(B)(i). Kachkar argues that other factors unrelated to the Inyx loan caused the bank's insolvency. But the court never found that Kachkar was the *sole* contributor to that insolvency. Nor did it need to—the sentencing guidelines only require that a bank's safety and soundness be jeopardized "as a result of the offense." U.S.S.G. § 2B1.1, cmt. n.14(A).

The court's finding on this point was adequately supported by the record. An FDIC agent testified that the loss from the Inyx loan "literally ate away all the profit [Westernbank] had for [2007]; and even over and above that [made] them have negative earnings. But it also—because they had those negative earnings, it ate away at their capital." Citing an FDIC report, the agent explained how

the erosion of capital harmed the bank's ability to acquire new capital and stay afloat. That report referenced Inyx as a source of Westernbank's losses.

A defense expert likewise testified that an undercapitalized bank would suffer reputationally and struggle to find the funding necessary to survive. These statements concerned the operation of banks generally. So, despite Kachkar's arguments to the contrary, specific analysis of Westernbank's losses was unnecessary. In light of the evidence at sentencing, the court did not clearly err by finding that Kachkar substantially jeopardized the safety and soundness of the bank.

b.      Two-level enhancement

Kachkar further argues that, in applying a two-level enhancement under Section 2B1.1(b)(2)(A)(iii), the district court erroneously recited factors from Application Note 14(B), which governs a different enhancement. The enhancement under Section 2B1.1(b)(2)(A)(iii) applies when the offense "resulted in substantial financial hardship" to the victim. The evidence discussed just above meets that standard, even applying the correct factors in Application Note 4(F). And those factors (referring to insolvency, filing for bankruptcy, etc.) are materially similar to the ones the district court actually analyzed. At any rate, because the court excluded this enhancement from its guidelines range calculations out of double-counting concerns, any error did not affect Kachkar's sentence and was harmless. *United States v. Barner*, 572 F.3d 1239, 1248 (11th

Cir. 2009) (citing *United States v. Scott,* 441 F.3d 1322, 1329 (11th Cir.2006) ("A Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error.").

### 3.    Restitution Award

Finally, Kachkar argues that the district court erred by awarding $103,490,005 in restitution to the FDIC. He first asserts that the court violated his Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by finding the underlying loss itself rather than submitting the question to a jury. He then asserts that the government did not prove the loss by a preponderance of the evidence. We review the *Apprendi* issue *de novo* and the court's factual findings about the restitution amount for clear error. *United States v. Woodruff,* 296 F.3d 1041, 1046 (11th Cir. 2002); *United States v. Moran*, 778 F.3d 942, 959–60 (11th Cir. 2015).

### a.    Applicability of *Apprendi*

In *Dohrmann v. United States*, we held that *Apprendi* does not apply to restitution orders. 442 F.3d 1279, 1281 (11th Cir. 2006). But Kachkar argues that the Supreme Court abrogated that holding in *Southern Union Co. v. United States*, 567 U.S. 343 (2012). There, the Court applied *Apprendi* to the imposition of criminal fines. *Id.* at 349. It held that "[i]n stating *Apprendi's* rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentences,' 'penalties,' or 'punishments' . . . ." *Id.* at

350. Kachkar argues that this reasoning extends to criminal restitution.

We conclude that *Southern Union* did not abrogate our holding in *Dohrmann*. The relevant statute in *Southern Union* imposed a maximum fine of $50,000 per day. 567 U.S. at 347; 42 U.S.C. § 6928(d). And the Court there specifically noted that there could not "be an *Apprendi* violation where no maximum is prescribed." *Southern Union*, 567 U.S. at 353. By contrast, our analysis in *Dohrmann* hinged on the absence of a maximum award in the restitution statute. 442 F.3d at 1281; *see also* 18 U.S.C. § 3663. Kachkar creatively argues that the statutory maximum for restitution is "zero" absent a jury finding, but in support he only cites a single dissent from a denial of certiorari on this very issue. *See Hester v. United States*, 139 S. Ct. 509, 510 (2019) (Gorsuch, J., dissenting). Furthermore, since *Southern Union* was issued, several of our sister circuits have continued declining to extend *Apprendi* to restitution. *See United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016); *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015); *United States v. Bengis*, 783 F.3d 407, 412–13 (2d Cir. 2015); *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014); *United States v. Green*, 722 F.3d 1146, 1148–51 (9th Cir. 2013); *United States v. Wolfe*, 701 F.3d 1206, 1216–18 (7th Cir. 2012); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012). We do the same and conclude that the district court was not required to submit the question of the loss amount to the jury.

b.      Proof of Victim's Loss

The government bears the burden of demonstrating the amount of the victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e). It must do so "with evidence bearing 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Osman*, 853 F.3d 1184, 1189 (11th Cir. 2017) (quoting *United States v. Singletary*, 649 F.3d 1212, 1217 n.21 (11th Cir. 2011)). At the sentencing hearing, an FDIC agent explained the loss calculations from a statement in the presentence report. But that statement was prepared by someone else in the agency, and the agent admitted that he had not seen any of the documents underlying the calculations. Kachkar thus argues that the loss amount was unsubstantiated.

The government contends that Kachkar waived this argument by objecting to the evidentiary basis for the award only after the sentence was imposed. But we have held that parties' failure to object to facts in a presentence report before a sentence is announced cannot "limit the objections cognizable on appeal." *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc). Here, defense counsel objected to the amount of restitution after an inquiry by the court. That sufficed to preserve any factual error in the award, *see United States v. Fox*, 140 F.3d 1384, 1385 (11th Cir. 1998), so the government's waiver argument fails.

Nonetheless, the government adequately proved the loss amount through the testimony of the FDIC agent. To be sure, that agent did not prepare the victim loss statement and had not personally seen the documents underlying its calculations. But he was able to explain those calculations in detail, and the statement was apparently signed by the person who prepared it. The statement thus bore "sufficient indicia of reliability" so that the court's reliance on it was not clear error. *See Osman*, 853 F.3d at 1189.

## III. CONCLUSION

Kachkar's conviction and sentence are **AFFIRMED**.